Andrew O. Schiff
Email: schiffa@sec.gov
Attorney for Plaintiff
Securities and Exchange Commission
801 Brickell Ave., Ste. 1800
Miami, FL 33131
Telephone: (305) 982-6390
Facsimile: (305) 536-4154

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STRATEGIC GLOBAL INVESTMENTS, INC. et al.,<br><br>Defendants. | Case No. 16-cv-00514-JLB (WVG)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

The Securities and Exchange Commission ("SEC") submits the following Reply Memorandum in Support of its Motion for Partial Summary Judgment against Strategic Global Investments, Inc. ("Strategic") and Andrew T. Fellner ("Fellner," and, collectively with Strategic, "Defendants").

**I.     Objections to Evidence**

In connection with a summary judgment motion, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Such an objection places "[t]he

burden . . . on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id.*, 2010 Advisory Committee Note; *see JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (A party relying on a document that is not itself admissible must show how "the underlying evidence could be provided in an admissible form at trial, such as by live testimony."). Under these standards, the evidence described below cannot be considered on summary judgment.

### A. Equipment and Plant List (Exh. 2[1])

Exhibit 2 lists various equipment, including a reference to "25 plants." Counsel's declaration states that this is the list of equipment and plants related to Strategic's acquisition of BearPot, but the document itself says nothing of the kind. Defendants do not explain how either this list or its contents would be admissible: as noted in our opening memorandum, Fellner has asserted his Fifth Amendment privilege, which precludes him from testifying at trial. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) ("Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial."). Moreover, BearPot's principal, Robert Coffy, has also asserted his Fifth Amendment privilege,

---

[1]References are to the Exhibits attached to the Declaration of Michael Jacobs.

and Defendants have stipulated that they will not call him as a witness.[2]  Finally, the signer of the list, "Devin A. Crowbear/Grow Master," was not identified as a person with knowledge on Defendants' initial disclosures.[3]  Therefore, the Court should not consider the purported Equipment and Plant List.

## B.    Letter from Cliff Black (Exh. 3)

Exhibit 3 is a November 28, 2016 letter from Colorado attorney Cliff Black responding to a discovery subpoena served by the SEC.  The letter briefly describes certain documents that had been withheld on the basis of the attorney-client privilege.[4]  Defendants have not waived the privilege[5] and they cannot rely on the mere existence of these documents to avoid summary judgment:

> Although . . . reliance on advice of counsel may be probative of non-willfulness, the district court was within its discretion in precluding [defendant] from relying on advice of counsel in this case. The privilege which protects attorney-client communications may not be used both as a sword and a shield.  Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.  Here, [defendant] sought to argue that he continued his [copyright] infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the "eleventh hour."  Under these circumstances, the district court was

---

[2]Reply Declaration of Andrew O. Schiff, Jan. 20, 2017, Exh. 1 (Robert Coffy Declaration); Exh. 2 (Stipulation Regarding Robert Coffy Testimony).

[3]Schiff Reply Dec., Exh. 3 (Defendants' Initial Disclosures).

[4]The privilege had been asserted in a previous letter from Mr. Black.  *See* Schiff Reply Dec., Exh. 4 (Letter from Cliff Black, Nov. 22, 2016).

[5]Schiff Reply Dec., Exh. 5 (Transcript of Cliff Black Deposition).  At the deposition, Defendants' counsel stated "my clients fully assert all the attorney/client privileges they hold . . . ."  Trans., 12/12/2016, at 6:22-24.

within its discretion in precluding [defendant] from invoking the advice of counsel defense.

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (citations and quotations omitted). Therefore, the Court should sustain the SEC's objection to Mr. Black's letter.

The "facts" in Mr. Black's letter are also irrelevant to the case. To establish reliance on counsel, a party must show that "he made a full disclosure of all material facts to his attorney and that he then relied in good faith on the specific course of conduct recommended by the attorney." *United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010) (citation and quotation omitted); *see also SEC v. Retail Pro, Inc.*, 2011 WL 2532501 (S.D. Cal. June 23, 2011) (defense of reliance on professionals requires proof that defendant "made complete disclosure to the professional") (citation and quotation omitted).

Mr. Black's description of the documents does not show, as would be required for assertion of the advice-of-counsel defense, that (a) Defendants disclosed to Mr. Black that the facility was located in Teller County and that Fellner was a California resident, and (b) Mr. Black nevertheless advised Defendants that Strategic could legally cultivate marijuana under state and county law, which advice Defendants relied upon in good faith. Moreover, based on Mr. Black's description, the earliest documents are "intake forms" dated February 14, 2014, which is *after* the critical first press release issued February 10, 2014, where Defendants represented that they had

"fully evaluated" the industry, were attempting to capitalize on Colorado's recent legalization of recreational marijuana, and intended to start a new crop within weeks, which was "sure to bring in significant revenue" within six to nine months. Thus, Mr. Black's letter is irrelevant and should not be considered.

## C. Contracts with JGMJ Consulting and The Industrial Hemp and Medical Marijuana Consulting Company (Exhs. 4 and 5)

Defendants submit contracts between Strategic and two marijuana consulting firms. The SEC does not concede the existence of an "advice of consultants" defense. However, assuming such a defense existed, it would, like advice of counsel, require Defendants to show that, armed with all the facts, the consultants advised Defendants that they could operate legally and Defendants followed that advice in good faith. However, Fellner will not be testifying, and Defendants neither deposed nor submitted declarations from anyone associated with the consulting companies. (Moreover, the contract with Industrial Hemp is dated March 19, 2014, by which time Defendants had already issued five of the six press releases.) These contracts standing alone bear no relevance to this matter and should be excluded.[6]

## D. Portions of Strategic's September 2014 Form 1-A (Exh. 6)

Defendants rely on Strategic's September 2014 Form 1-A for the proposition that they moved their facility from Teller County to El Paso County. However, this is

---

[6]Defendants' Opposition (at p.3) asserts—unsupported by record evidence—that the consultations related to such matters as growing techniques and proper labeling. The consultations are therefore totally irrelevant to whether Defendants had a basis to believe Strategic could legally cultivate marijuana as represented in its press releases.

classic hearsay: Defendants are attempting to use their own out-of-court statement (Strategic's Form 1-A) to prove the truth of the fact that Strategic had a facility in El Paso County. *See* Fed. R. Evid. 801(c). Given the inability of Fellner or Coffy to testify and the fact that Defendants' initial disclosures mention no one other than Fellner as a person with knowledge of the facts, Defendants provide no basis for the Court to conclude they can prove the facts set forth in the Form 1-A.

Moreover, the document contains no relevant information. Contrary to Defendants' characterization, the document does not mention a "move" from Teller County to El Paso County. Rather, the document states the facility was located in El Paso County (apparently from the beginning), says nothing about Teller County, and represents that Strategic's plan had been to grown *medical* marijuana. This contradicts the press releases, which had placed the facility in Teller County and stated that the plan was to take advantage of the recent legalization of recreational marijuana (although some releases mention medical marijuana as an additional product). Nothing in the Form 1-A changes the fact that Defendants' statements about Strategic commencing growing operations at its Teller County facility were false when made.

## II. Summary Judgment for the SEC is Proper

### A. Fifth Amendment

Defendants claim—dubiously and without record support—that Fellner's motivation for asserting the self-incrimination privilege is his fear of a federal drug

prosecution. (Opp. at 5) However, in SEC investigative testimony related to Strategic in April 2013—ten months *before* Strategic's entry into the marijuana market—Feller asserted the Fifth Amendment in response to all substantive questions. During that testimony, his counsel stated: "[Fellner] understands that an adverse inference can be drawn from his assertion of the Fifth."[7] Thus, Fellner clearly prefers to assert the Fifth Amendment in Strategic-related matters regardless of whether marijuana is involved.

In any event, Fellner cites no authority that would make relevant his motivation for asserting the privilege. Such a rule would not make sense: Fellner's assertion of the Fifth Amendment prejudices the SEC regardless of his reason for asserting it.

Finally, as noted in our opening memorandum, there is sufficient evidence of Defendants' scienter even absent any Fifth-Amendment related adverse inference or burden shifting. Defendants' response makes that even more clear. If there was evidence that Defendants actually had a basis to believe that Strategic could legally engage in marijuana cultivation, Defendants could have easily deposed or submitted declarations from the people who communicated that information to Fellner. Defendants' failure to do so shows that no such communication occurred.

---

[7]Schiff Reply Dec., Exh. 6 (Fellner Testimony, 4/30/2013, at 16:2-4).

**B. Defendants Miscellaneous Arguments Lack Merit**

Defendants' various remaining arguments fail to demonstrate the existence of disputed material facts that would preclude the entry of summary judgment:[8]

1. Defendants mischaracterize the press releases as merely announcing Strategic's intent to enter a new business. However, the releases go well beyond that, touting Strategic's acquisition of a facility that could presently grow marijuana and enable Strategic to earn revenue. Defendants analogize their releases to a company's announcing its development of a new drug it hopes to bring to market. (Opp. at 7) But that is nothing like the situation here. A more apt analogy would be to a company announcing that within weeks it will begin producing a new medicine that will bring in revenue within months, without disclosing the Food and Drug Administration's failure to approve the drug. *See In re Dura Pharmaceuticals, Inc. Securities Lit.*, 548 F. Supp. 2d 1126, 1136-37 (S.D. Cal. 2008) (statement that company was "close to successfully bringing [drug] to market" was materially false when clinical trials had "doomed the . . . prospects of FDA approval").

2. Defendants claim there was a "virtual whirlwind of legal and regulatory changes." However, Teller County's ordinance had been in effect for nearly a year at the time of the press releases. With respect to the residency requirement, Defendants tell the court (and criticize the SEC for supposedly omitting)

---

[8]With respect to the evidence to which the SEC objected, to the extent the Court overrules the objection, for the reasons stated in the objection, that evidence does not impact the Commission's entitlement to summary judgment.

"the simple fact that the residency requirement was repealed on June 10, 2014." (Opp. at 6)  However, Defendants do not have their facts straight:  the bill repealing the residency requirement was enacted June 10, 20<u>16</u>, not 2014.[9]  This change more than two years after the fact is of no help to Defendants, and their "law in flux" defense was clearly manufactured for purposes of this litigation.

3.    Defendants point to the press releases' inclusion of language referencing the safe harbor for forward looking statements.  However, the safe harbor does not apply to (a) SEC enforcement actions, *SEC v. E-Smart Technologies, Inc.*, 74 F. Supp. 3d 306, 324 (D.D.C. 2014), and (b) penny stock issuers, 15 U.S.C. §§ 77z-2(b)(1)(C), 78u-5(b)(1)(C).  Moreover, the safe harbor does not shelter statements such as Strategic's that were misleading at the time they were made.

4.    Defendants point to evidence that Strategic's stock price did not increase after the issuance of the press releases.  Defendants are rebutting a market manipulation claim the SEC is not asserting.  As detailed in our opening memorandum, our claim arises under Rule 10b-5(b), relating to false statements, and the SEC has established the elements of this claim based on the undisputed facts.  To the extent Defendants are asserting that the absence of a stock price increase demonstrates that the information was immaterial, "[t]his argument fails. Materiality

---

[9]*See* Schiff Reply Dec., Exh. 7 (copy of Colorado Senate Bill 16-040, § 9, at pp. 1189-90 (showing deletion of residency requirement), p. 1193 (showing approval date)).  Ironically, the bill would not have helped Strategic, because it added a prohibition on licenses being held by publicly traded companies.  The bill is available at http://leg.colorado.gov/sites/default/files/documents/2016a/bills/sl/sl_293.pdf.

in securities fraud does not depend on demonstration of a market reaction to the misstatements." *United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011).[10] As demonstrated in our opening memorandum, Defendants' representations that Strategic would be earning revenue in the near future from a product it lacked the present ability to produce were material as a matter of law.

## CONCLUSION

Defendants purport to dispute the material falsity and scienter elements of the SEC's claim. However, with respect to material falsity, they proffer no evidence that Strategic actually had the legal ability to produce marijuana. With respect to scienter, they submit no evidence that shows that Defendants had any basis (let alone a reasonable basis) to believe Strategic could have legally engaged in the course of business described in the press releases. Therefore, for the reasons stated above and in the SEC's opening memorandum, the Court should grant the SEC's Motion for Partial Summary Judgment.

---

[10]Even those circuits that have treated an absence of stock price movement as evidence that the statements were immaterial do so in the context of an "efficient" market. *See Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000). Defendants make no effort to show that the OTC Pink marketplace where Strategic traded was efficient. *See Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (affirming district court's holding that market for "pink sheet" stock was not efficient).

Dated: January 20, 2017

Respectfully submitted,

s/ Andrew O. Schiff
Andrew O. Schiff
Attorney for Plaintiff
Securities and Exchange Commission
Email: schiffa@sec.gov

## CERTIFICATE OF SERVICE

I, ANDREW O. SCHIFF, do hereby certify that I am a citizen of the United States and am at least eighteen years of age. My business address is 801 Brickell Avenue, Suite 1800, Miami, Florida 33131.

I am not a party to the above-entitled action. I have caused service of the **SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT** and all accompanying documents on the party/counsel listed below by electronically filing it with the Clerk of the District Court using its ECF System, which electronically notifies said party/counsel in this case:

Michael W. Jacobs, Esq.
Email: mjacobslaw12@gmail.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 20, 2017.

s/ Andrew O. Schiff
Andrew O. Schiff