# EXHIBIT 18

# #1

STRATEGIC 0001

EXHIBIT 18
PAGE 228

## STOCK PURCHASE AGREEMENT

**THIS STOCK PURCHASE AGREEMENT** (the "Agreement"), is made and entered into as of this 5th day of February, 2014, by and among Strategic Global Investments, Inc., a Delaware corporation, having an address of 8451 Miralani Drive, Suite D, San Diego, California 92126 (the "Purchaser"), and Robert Coffy, having an address of 40723 Mountain Pride Drive, Murrieta, California 92562, (the "Seller").

### W I T N E S S E T H:

**WHEREAS**, the Seller owns one (1) share of the common stock (the "Share") of BearPot, Inc., a Colorado corporation (the "Company), which is the only issued and outstanding share of stock of the Company;

**WHEREAS**, the Sellers desire to sell, and Purchaser desires to purchase, the Share in accordance with the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual premises herein contained and intending to be legally bound hereby, Purchaser and Sellers agree as follows:

### SECTION 1. PURCHASE AND SALE

**1.01** **Purchase of Share.** Subject to the terms and conditions of this Agreement, Seller agrees to sell, transfer and assign to Purchaser, all of Seller's right, title and interest in and to the Share, and Purchaser agrees to purchase the Share from Seller. At the Closing (as hereinafter defined), any share certificate which represents the Share will be delivered to the Purchaser duly endorsed in blank for transfer, or if no share certificate exists, an assignment and bill of sale of the Share satisfactory in form to the Purchaser and executed by the Seller transferring the Share to Purchaser shall be delivered to Purchaser.

**1.02** **Closing.** The closing will take place at a time and place to be agreed upon by the parties (the "Closing").

**1.03** **Purchase Price.** The purchase price to be paid by Purchaser for the Share (the "Purchase Price") shall be Fifty Thousand and 00/100 Dollars ($50,000.00), which shall be paid by Purchaser as follows: $50,000 in cash.

(a) At the Closing, Purchaser will deliver to Seller $10,000 by check or wire transfer and the balance within 30 days from closing.

(b) Beginning on March 1, 2014 and on the first of each month thereafter for five (5) additional months, the Purchaser will deliver to Seller by check the amount of $2,000 for a total of $10,000.

### SECTION 2. REPRESENTATIONS AND WARRANTIES

1

**2.01** <u>Representations and Warranties of Seller.</u> Seller represents and warrants to Purchaser as follows:

(a) <u>Authority.</u> Seller has the right, power, capacity and authority to enter into and perform his obligations under this Agreement, including selling the Share, and consummate the transactions contemplated herein;

(b) <u>Execution.</u> This Agreement has been duly and validly executed and delivered by Seller and constitutes a valid and binding obligation of Seller enforceable against him in accordance with the terms set forth herein, except to the extent such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights of creditors generally, and by general principles of equity;

(c) <u>Shares.</u>     . The Shares are owned beneficially and of record solely by Seller free and clear of liens or encumbrances, and valid title to the Shares shall pass to Purchaser at the Closing, free and clear of liens or encumbrances;

(d) <u>Consents.</u> To the best of Seller's knowledge, no consent or approval of any person or entity is necessary for the sale of the Share to Purchaser as contemplated by this Agreement;

(e) <u>Proceedings.</u> To the best of Seller's knowledge, no action, suit, proceeding or order to restrain or prohibit the consummation of the transactions contemplated under this Agreement is currently pending or threatened;

(f) <u>Assets.</u> The assets the Company owns are: (a) equipment with a market value of $10,000 and (b) living plants that are healthy and growing and have a market value of $5,000 and training by the Seller in the field of cannabis cultivation, sales and assist in obtaining any and all new licenses and permits that may be required due to changes in Colorado law valued by the parties at $35,000.

(g) <u>Real Property.</u> The Company does not own any real property and is leasing the facility.

(h) <u>Existing Liabilities.</u> The Company does not have any liability or obligation of any nature (whether known or unknown and whether absolute, accrued, contingent, or otherwise) and will not have any at the time of the Closing;

(i) <u>Employees.</u> The Company has no employees but engages several independent contractors and consultants.

(j) <u>Compliance with Laws.</u>

2

STRATEGIC 0003

EXHIBIT 18
PAGE 230

(i)     The Company has at all times been in compliance with every legal Requirement that is or was applicable to it or the conduct of its business or the ownership or use of any of its assets at the time of purchase.

(ii)     No event has occurred or circumstance exists that (with or without notice or lapse of time) (A) could constitute or result in a violation by the Company of, or a failure on the part of the Company to comply with, any legal requirement, or (B) could give rise to any obligation on the part of the Company to undertake, or to bear all or any portion of the cost of, any remedial action.

(iii)     The Company has not received any notice or other communication (whether oral or written) regarding (A) any actual, alleged, or potential violation of, or failure to comply with, any legal requirement, or (B) any actual, alleged, or potential obligation on the part of the Company to undertake, or to bear all or any portion of the cost of, any remedial action;

(iv)     The Company understands that there have been some changes to the Colorado laws and plans to comply with all of the laws of Colorado by applying and obtaining all licenses and permits that the new laws require with the help of Seller and Consultants hired by the company to provide such assistance. The Company will not sell any inventory until such laws are complied with.

(k)     **Environmental.**     To the knowledge of Seller, the proposed operations of the Company and/or its use of its assets do not violate any Legal requirement pertaining to the collection, transportation, storage, treatment, discharge, release, processing, handling, or disposal of substances that might pollute, contaminate, or be hazardous or toxic if present in the air, ground, or surface water, land or other parts of the environment or other wastes, including, without limitation (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§9601 et seq.), as amended from time to time ("CERCLA") (including, without limitation, as amended pursuant to the Superfund Amendments and Reauthorization Act of 1986), and such regulations promulgated under CERCLA, (b) the Resources Conservation and Recovery Act of 1976 (42 U.S.C. §§6901 et seq.), as amended from time to time ("RCRA") and such regulations promulgated under RCRA, and (c) any applicable federal, state, or local laws or regulations relating to the condition of the air, ground or surface water, land or other parts of the environment, to the release or potential release of any substance into the air, ground or surface water, land, or other parts of the environment (collectively, the "Applicable Environmental Laws"), and, to the knowledge of Seller, none of the proposed operations of the Company would constitute a violation of any of the applicable environmental laws that would have a material adverse effect on the financial condition, assets, business, or property of the Company taken as a whole; and

(l)     **Broker.**     Seller has not incurred any obligation or liability, contingent or otherwise, for any brokerage or finder's fee or agent's commission or other

3

**STRATEGIC.0004**

EXHIBIT 18
PAGE 231

similar payment in connection with this Agreement or the transaction contemplated hereby.

2.02  **Representations and Warranties of Purchaser.** Purchaser represents and warrants to Seller as follows:

(a)  **Authority.**  Purchaser has the right, power and authority to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby;

(b)  **Execution.**  This Agreement has been duly and validly executed and delivered by Purchaser and, when delivered, will constitute a valid and binding obligation of Purchaser enforceable in accordance with the terms set forth herein, except to the extent such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights of creditors generally, and by general principles of equity;

(c)  **Consents.**  To the best of Purchaser's knowledge, no consent or approval of any person or entity is necessary for the consummation by Purchaser of the transactions contemplated by this Agreement; and

(d)  **Proceedings.**  To the best of Purchaser's knowledge, no action, suit, proceeding or order to restrain or prohibit the consummation of the transactions contemplated under this Agreement is currently pending or threatened.

(e)  **Stock Restrictions.**  Purchaser acknowledges that he is aware that the Sale Shares have not been registered under the Securities Act of 1933, as amended, (the "Securities Act") nor under any state securities law. Purchaser further acknowledges that the Sale Shares cannot be sold or transferred except in compliance with the Securities Act and any applicable state securities law. Finally, Purchaser acknowledges that, as a result of the foregoing, the Sale Shares will bear a restrictive legend that will prevent their sale unless they are registered under the Securities Act or are sold under an exemption available thereunder.

2.03  **Survival.** The representations and warranties of the parties hereto contained in this Agreement shall survive the Closing and consummation of the transactions contemplated by this Agreement for a period of two (2) years from the Closing.

## SECTION 3. CONDITIONS TO PURCHASER'S OBLIGATIONS

3.01  The obligation of Purchaser to consummate the transaction contemplated by this Agreement is subject, in the sole discretion of Purchaser, to the satisfaction, on or prior to the Closing, of each of the following conditions (any of which may, in the sole discretion of Purchaser, be waived in whole or in part):

4

STRATEGIC.0005

EXHIBIT 18
PAGE 232

(a) **Representations, Warranties and Obligations.** All representations and warranties of Seller contained in this Agreement shall be true and correct in all respects as of the Closing, and Seller shall have performed all obligations to be performed by it as of the Closing pursuant to this Agreement.

(b) **Consents.** All approvals, consents, licenses, registrations, authorizations and waivers necessary, including those of lenders, governmental authorities and others shall have been obtained, to permit Seller to transfer the Shares pursuant to this Agreement.

(c) **Good Standing.** Purchaser shall have received a good standing certificate from the Colorado Department of State, showing the Company to be in good standing.

(d) **Changes.** There shall not have been any material adverse change in the condition of the assets of the Company prior to the Closing.

## SECTION 4. POST-CLOSING MATTERS

4. **Funding By Purchaser.** After the Closing, Purchaser shall contrib te to the Company the sum of $2,000 per month for 5 months starting on March 1, 2014 and on the first of each month for the next 4 months thereafter.

## SECTION 5. MISCELLANEOUS

**5.01 Captions.** The captions of the various sections and subsections used herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement.

**5.02 Notices.** Any notice given hereunder by a party to the other party shall be in writing and shall be given either personally or sent by registered or certified mail, return receipt requested, which shall be addressed to the addresses of the parties set forth in the opening paragraph of this Agreement, or to such other address as may be designated by them. Any notice will be deemed delivered upon receipt thereof by the receiving party or on refusal of such receiving party to accept such notice.

**5.03 Amendments; Applicable Law.** The provisions of this Agreement may not be modified, amended, or waived except by a writing, executed by the parties hereto. This Agreement and all documents given in connection herewith shall be construed in accordance with the internal laws of the State of California without giving effect to the conflicts of laws principles thereof. Should any court find any provision of this Agreement to be less than fully enforceable due to its breadth or restrictiveness, or for any other reason, the parties hereto intend that the court shall enforce the remaining provision to the full extent permissible.

**5.04 Binding Effect and Assignment.** This Agreement shall inure to the benefit of, and shall be binding upon the parties hereto and their respective heirs, legal representatives,

5

STRATEGIC 0006

EXHIBIT 18
PAGE 233

successors and permitted assigns. This Agreement may not be transferred, assigned, pledged or hypothecated by either party without the prior written consent of the other party.

5.05  **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

5.06  **Entire Agreement.** This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes any and all prior or contemporaneous oral or written understandings, negotiations or communications on behalf of the parties hereto.

6

**STRATEGIC 0007**

EXHIBIT 18
PAGE 234

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first above written.

SELLER:

_____
Robert Coffy

PURCHASER:
Strategic Global Investments, Inc.

By: _____
Andrew Fellner, President

7

EXHIBIT 18
PAGE 235

# #2

STRATEGIC 0009

EXHIBIT 18
PAGE 236

# Receipt

| DATE | TICKET |
|------|--------|
| Tuesday, March 11, 2014 | 27074 |
| 6:35:48 PM | Page 1 of 1 |

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 10 | 355179 | Sun - Magnum XXXL -8" Air-Cooled Reflector (Was $257.95, Saved $720.10) | $185.94 | $1,859.40 |

|  | |
|--|--|
| Sub Total: | $1,859.40 |
| Sales Tax: | $155.44 |
| Total: | $2,014.84 |

| Payments | Amount |
|----------|--------|
| VISA | $2,014.84 |
| | $2,014.84 |

Card Number: XXXX....2439, Authorization: 691719, Amount: $2,014.84

X _____

Total Saved: $720.10

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

# Total:    $2,014.84

**STRATEGIC 00010**

EXHIBIT 18
PAGE 237

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| 10 | 708415 | Sun System Hardcore Remote Ballast 1000w HPS/MH 120/240 (Was $114.95, Saved $249.50) | $90.00 | $900.00 |
| 10 | 066965 | EYE HORTILUX - HPS Enhanced 1000 Watt - LU1000B/HTL/EN (Was $129.95, Saved $549.50) | $75.00 | $750.00 |
| 1 | 038877 | Titan Controls Helios 13 - 16 Light Controller with Timer (Was $849.95, Saved $130.01) | $719.94 | $719.94 |

|  |  |
|---|---|
| Sub Total: | $2,369.94 |
| Sales Tax: | $198.13 |
| Total: | $2,568.07 |

| Payments | Amount |
|---|---|
| VISA | $2,568.07 |
| | $2,568.07 |

Card Number: XXXX....2439, Authorization: 547078, Amount: $2,568.07

X _____

Total Saved: $929.01

**Total:    $2,568.07**

STRATEGIC 00011 .

EXHIBIT 18
PAGE 238

# Receipt

## Reprint

| BILL TO: | | SHIP TO: |
|---|---|---|

BearPot Inc BearPot Inc
BearPot Inc

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:    $2,568.07**

**STRATEGIC 00012**

EXHIBIT 18
PAGE 239

# Receipt

## Reprint

| BILL TO: | | SHIP TO: |
|----------|--|----------|

BearPot Inc BearPot Inc
BearPot Inc

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 1334 | PHRESH FILTER 10X39 1400 CFM (Was $304.95, Saved $111.70) | $193.25 | $193.25 |
| 10 | 199755 | PROGRIP (Rope Ratchet) - Light Hangers 1/8" - 1 pair (Was $16.95, Saved $62.10) | $10.74 | $107.40 |
| 3 | 557502 | Ideal Air Silver/Silver Ducting 10x25 (Was $34.95, Saved $35.91) | $22.98 | $68.94 |
| 4 | 820104 | eco plus 18" wall mount fan (Was $57.95, Saved $40.04) | $47.94 | $191.76 |
| 4 | 752716 | TITAN CONTROLS - Apollo 8 (Was $11.95, Saved $12.04) | $8.94 | $35.76 |
| 1 | 718840 | Can-Fan Max Fan 10in (Was $306.65, Saved $85.91) | $220.74 | $220.74 |
| 2 | 770 | Sunshine Mix #4  Aggregate Plus - 3.8 cu.ft. (Was $52.95, Saved $27.92) | $38.99 | $77.98 |
| 2 | 053674 | FOX FARM - Ocean Forest Soil - 1.5cu.ft. Bag (Was $20.95, Saved $11.98) | $14.96 | $29.92 |
| 2 | 394722 | MOTHER EARTH - Perlite #4  - 4cu. ft. bag (Was $45.95, Saved $35.90) | $28.00 | $56.00 |
| 40 | 822983 | SMART POT 5 GALLON (50CS) (Was $5.95, Saved $38.00) | $5.00 | $200.00 |
| 40 | 022523 | SMART POT 1 GALLON (100CS) (Was $2.19, Saved $7.60) | $2.00 | $80.00 |
| 2 | 279 | Panda Film Roll - 10' X 100' (Was $92.95, Saved $55.90) | $65.00 | $130.00 |
| 3 | 379433 | Wind King 8" Inline Fan 745 C.F.M. 1.7 Amps (Was $159.95, Saved $224.85) | $85.00 | $255.00 |
| 1 | 050487 | Bluelab Soil pH Meter (Was $240.00, Saved $61.25) | $178.75 | $178.75 |
| 1 | 147909 | MONDI - Utilty Sump Pump 1200x | $81.19 | $81.19 |

## Total:     $2,735.88

STRATEGIC 00013

EXHIBIT 18
PAGE 240

# Receipt

## Reprint

| BILL TO: | | SHIP TO: |
|----------|---|----------|

BearPot Inc BearPot Inc
BearPot Inc

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 932 | (Was $108.95, Saved $27.76) ECOPLUS - Commercial Air 1 - 18 watts - Single outlet 38 Liter/min | $38.13 | $38.13 |
| 2 | 416534 | (Was $36.95, Saved $16.36) DEEP WATER - Double Air Diffuser - 1/4" ID | $27.50 | $55.00 |
| 10 | 923964 | (Was $0.15, Saved $18.90) 3/16 ID BLACK TUBING PER FOOT | $0.10 | $1.00 |
| 1 | 609576 | (Was $3.59, Saved $0.50) Twist Tie diespenser with cutter - 164 ft | $2.15 | $2.15 |
| 4 | 680670 | (Was $86.95, Saved $1.44) EYE HORTILUX - 1000 Super MH - U/BT-37 HTL | $55.00 | $220.00 |
| 1 | 777049 | (Was $39.95, Saved $127.80) Grower's Edge Dry Rack w/ 3 in Opening (12/Cs) | $29.94 | $29.94 |
| 1 | 531664 | (Was $26.95, Saved $10.01) FISKARS - Easy Pour Watering Can 2.6 Gallon | $19.81 | $19.81 |
| 1 | 765868 | (Was $9.49, Saved $7.14) ECOPLUS - 64 oz/1.9 Liter Spray Bottle (SPRAYER) | $5.94 | $5.94 |
| 3 | 891431 | (Was $12.29, Saved $3.55) Tarp Zip-Up | $8.60 | $25.80 |
| 1 | 188286 | (Was $83.95, Saved $11.07) TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | $63.00 |
| 1 | 126515 | (Was $32.95, Saved $20.95) Fiskars Micro Tip Blades Pruning Snip 2/Pack (6/Cs) | $24.95 | $24.95 |
| 40 | 661262 | (Was $1.35, Saved $8.00) 10" GREEN PREMIUM PLASTIC SAUCER | $1.03 | $41.20 |
| 40 | 963094 | (Was $3.09, Saved $12.80) 16" GREEN PREMIUM PLASTIC SAUCER (40/CS) (Was $3.09, Saved $32.40) | $2.28 | $91.20 |

## Total: $2,735.88

STRATEGIC.00014

EXHIBIT 18
PAGE 241

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | | PRICE EACH | AMOUNT |
|---|---|---|---|---|---|

| | |
|---|---|
| Sub Total: | $2,524.81 |
| Sales Tax: | $211.07 |
| Total: | $2,735.88 |

| Payments | Amount |
|---|---|
| VISA | $2,735.88 |
| | $2,735.88 |

Card Number: XXXX....2439, Authorization: 804466, Amount: $2,735.88

X _____

Total Saved: $1,109.78

Paid for: 10 Magnum Hoods

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:      $2,735.88**

STRATEGIC.00015

EXHIBIT 18
PAGE 242

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 80207 | House & Garden Soil Nutrient A & B (together) -- 20 Liters (Was $209.99, Saved $81.89) | $128.10 | $128.10 |
| 1 | 80185 | House & Garden Drip Clean 1 Liter (Was $59.99, Saved $23.39) | $36.60 | $36.60 |
| 1 | 80214 | House & Garden Roots Excelurator -- 1 Liter (Was $269.99, Saved $105.29) | $164.70 | $164.70 |
| 1 | 252096 | House & Garden Amino Treatment 1L (Was $189.99, Saved $74.09) | $115.90 | $115.90 |
| 1 | 80216 | House & Garden Multi Zen -- 5 Liters (Was $169.99, Saved $66.29) | $103.70 | $103.70 |
| 1 | 80219 | House & Garden Bud XL -- 5 Liters (Was $224.99, Saved $87.74) | $137.25 | $137.25 |
| 1 | 80221 | House & Garden Top Booster - 500 milliliter (Was $21.99, Saved $8.87) | $13.12 | $13.12 |
| 1 | 578792 | House & Garden Top Shooter 1L (Was $224.99, Saved $88.35) | $136.64 | $136.64 |
| 1 | 80182 | House & Garden Magic Green -- 1 Liter (Was $95.99, Saved $37.43) | $58.56 | $58.56 |
| 1 | 931677 | House & Garden Nitrogen Boost 1L (12cs) (Was $62.00, Saved $2.01) | $59.99 | $59.99 |

| | |
|---|---|
| Sub Total: | $954.56 |
| Sales Tax: | $79.80 |
| Total: | $1,034.36 |

| Payments | Amount |
|----------|--------|
| VISA | $1,034.36 |
| | $1,034.36 |

## Total: $1,034.36

STRATEGIC 00016

EXHIBIT 18
PAGE 243

# Receipt

# Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

Card Number: XXXX....2439, Authorization: 443660, Amount: $1,034.36

X _____

Total Saved: $575.35

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:     $1,034.36**

**STRATEGIC 00017**

EXHIBIT 18
PAGE 244

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 421779 | TITAN ATLAS 2 Pre-set CO2 Moniter (Was $299.95, Saved $54.95) | $245.00 | $245.00 |
| 1 | 9900758 | C.A.P. (Custom Automated Products) - Atmosphere Co2 Controller, Day - (CS 1) (Was $216.95, Saved $56.95) | $160.00 | $160.00 |
| 1 | 569909 | 20lb Tank (Was $175.00, Saved $35.00) | $140.00 | $140.00 |
| 1 | 945216 | TITAN CONTROLS - CO2 REGULATOR (Was $114.95, Saved $28.70) | $86.25 | $86.25 |
| 1 | 828850 | Titan Controls CO2 Regulatior System w/ 25 ft Tubing (Was $17.95, Saved $4.25) | $13.70 | $13.70 |
| -1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | ($63.00) |
| -1 | 050487 | Bluelab Soil pH Meter | $178.75 | ($178.75) |
| 1 | 370878 | Bluelab Soil PH Pen (Was $185.00, Saved $50.00) | $135.00 | $135.00 |

| | |
|---|---|
| Sub Total: | $538.20 |
| Sales Tax: | $45.00 |
| Total: | $583.20 |

| Payments | Amount |
|----------|--------|
| VISA | $583.20 |
| | $583.20 |

## Total:     $583.20

STRATEGIC 00018

EXHIBIT 18
PAGE 245

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

Card Number: XXXX....2439, Authorization: 671415, Amount: $583.20

X _____

Total Saved: $147.65

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:** **$583.20**

*STRATEGIC.00019*

EXHIBIT 18
PAGE 246

# #4

STRATEGIC 00020

EXHIBIT 18
PAGE 247

# Receipt

## Reprint

BILL TO:

BearPot Inc BearPot Inc
BearPot Inc

SHIP TO:

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 10 | 355179 | Sun - Magnum XXXL -8" Air-Cooled Reflector (Was $257.95, Saved $720.10) | $185.94 | $1,859.40 |

|  |  |
|--|--|
| Sub Total: | $1,859.40 |
| Sales Tax: | $155.44 |
| Total: | $2,014.84 |

| Payments | Amount |
|----------|--------|
| VISA | $2,014.84 |
| | $2,014.84 |

Card Number: XXXX....2439, Authorization: 691719, Amount: $2,014.84

X _____

Total Saved: $720.10

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

### Total:     $2,014.84

STRATEGIC.00021 ..

EXHIBIT 18
PAGE 248

# Receipt

| DATE | TICKET |
| --- | --- |
| Wednesday, March 12, 2014 | 27114 |
| 6:52:29 PM | Page 1 of 2 |

## Reprint

| BILL TO: | SHIP TO: |
| --- | --- |
| BearPot Inc BearPot Inc<br>BearPot Inc | |

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
| --- | --- | --- | --- | --- |
| 10 | 708415 | Sun System Hardcore Remote Ballast 1000w HPS/MH 120/240 (Was $114.95, Saved $249.50) | $90.00 | $900.00 |
| 10 | 066965 | EYE HORTILUX - HPS Enhanced 1000 Watt - LU1000B/HTL/EN (Was $129.95, Saved $549.50) | $75.00 | $750.00 |
| 1 | 038877 | Titan Controls Helios 13 - 16 Light Controller with Timer (Was $849.95, Saved $130.01) | $719.94 | $719.94 |

Sub Total: $2,369.94
Sales Tax: $198.13
Total: $2,568.07

| Payments | Amount |
| --- | --- |
| VISA | $2,568.07 |
| | $2,568.07 |

Card Number: XXXX....2439, Authorization: 547078, Amount: $2,568.07

X _____

Total Saved: $929.01

## Total: $2,568.07

STRATEGIC 00022

EXHIBIT 18
PAGE 249

# Receipt

## Reprint

| BILL TO: | SHIP TO: |
| --- | --- |
| BearPot Inc BearPot Inc | |
| BearPot Inc | |

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
| --- | --- | --- | --- | --- |

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:    $2,568.07**

STRATEGIC 00023

EXHIBIT 18
PAGE 250

# Receipt

## Reprint

| BILL TO: | SHIP TO: |
|----------|----------|
| BearPot Inc BearPot Inc<br>BearPot Inc | |

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|-----------|--------|
| 1 | 1334 | PHRESH FILTER 10X39 1400 CFM<br>(Was $304.95, Saved $111.70) | $193.25 | $193.25 |
| 10 | 199755 | PROGRIP (Rope Ratchet) - Light Hangers 1/8" - 1 pair<br>(Was $16.95, Saved $62.10) | $10.74 | $107.40 |
| 3 | 557502 | Ideal Air Silver/Silver Ducting 10x25<br>(Was $34.95, Saved $35.91) | $22.98 | $68.94 |
| 4 | 820104 | eco plus 18" wall mount fan<br>(Was $57.95, Saved $40.04) | $47.94 | $191.76 |
| 4 | 752716 | TITAN CONTROLS - Apollo 8<br>(Was $11.95, Saved $12.04) | $8.94 | $35.76 |
| 1 | 718840 | Can-Fan Max Fan 10in<br>(Was $306.65, Saved $85.91) | $220.74 | $220.74 |
| 2 | 770 | Sunshine Mix #4  Aggregate Plus - 3.8 cu.ft.<br>(Was $52.95, Saved $27.92) | $38.99 | $77.98 |
| 2 | 053674 | FOX FARM - Ocean Forest Soil - 1.5cu.ft. Bag<br>(Was $20.95, Saved $11.98) | $14.96 | $29.92 |
| 2 | 394722 | MOTHER EARTH - Perlite #4  - 4cu. ft. bag<br>(Was $45.95, Saved $35.90) | $28.00 | $56.00 |
| 40 | 822983 | SMART POT 5 GALLON (50CS)<br>(Was $5.95, Saved $38.00) | $5.00 | $200.00 |
| 40 | 022523 | SMART POT 1 GALLON (100CS)<br>(Was $2.19, Saved $7.60) | $2.00 | $80.00 |
| 2 | 279 | Panda Film Roll - 10' X 100'<br>(Was $92.95, Saved $55.90) | $65.00 | $130.00 |
| 3 | 379433 | Wind King 8" Inline Fan 745 C.F.M. 1.7 Amps<br>(Was $159.95, Saved $224.85) | $85.00 | $255.00 |
| 1 | 050487 | Bluelab Soil pH Meter<br>(Was $240.00, Saved $61.25) | $178.75 | $178.75 |
| 1 | 147909 | MONDI - Utilty Sump Pump 1200x | $81.19 | $81.19 |

## Total:    $2,735.88

STRATEGIC 00024

EXHIBIT 18
PAGE 251

| BILL TO: | SHIP TO: |
|---|---|

BearPot Inc BearPot Inc
BearPot Inc

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| | | (Was $108.95, Saved $27.76) | | |
| 1 | 932 | ECOPLUS - Commercial Air 1 - 18 watts - Single outlet 38 Liter/min | $38.13 | $38.13 |
| | | (Was $54.49, Saved $16.36) | | |
| 2 | 416534 | DEEP WATER - Double Air Diffuser - 1/4" ID | $27.50 | $55.00 |
| | | (Was $36.95, Saved $18.90) | | |
| 10 | 923964 | 3/16 ID BLACK TUBING PER FOOT | $0.10 | $1.00 |
| | | (Was $0.15, Saved $0.50) | | |
| 1 | 609576 | Twist Tie diespenser with cutter - 164 ft | $2.15 | $2.15 |
| | | (Was $3.59, Saved $1.44) | | |
| 4 | 680670 | EYE HORTILUX - 1000 Super MH - U/BT-37 HTL | $55.00 | $220.00 |
| | | (Was $86.95, Saved $127.80) | | |
| 1 | 777049 | Grower's Edge Dry Rack w/ 3 in Opening (12/Cs) | $29.94 | $29.94 |
| | | (Was $39.95, Saved $10.01) | | |
| 1 | 531664 | FISKARS - Easy Pour Watering Can 2.6 Gallon | $19.81 | $19.81 |
| | | (Was $26.95, Saved $7.14) | | |
| 1 | 765868 | ECOPLUS - 64 oz/1.9 Liter Spray Bottle (SPRAYER) | $5.94 | $5.94 |
| | | (Was $9.49, Saved $3.55) | | |
| 3 | 891431 | Tarp Zip-Up | $8.60 | $25.80 |
| | | (Was $12.29, Saved $11.07) | | |
| 1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | $63.00 |
| | | (Was $83.95, Saved $20.95) | | |
| 1 | 126515 | Fiskars Micro Tip Blades Pruning Snip 2/Pack (6/Cs) | $24.95 | $24.95 |
| | | (Was $32.95, Saved $8.00) | | |
| 40 | 661262 | 10" GREEN PREMIUM PLASTIC SAUCER | $1.03 | $41.20 |
| | | (Was $1.35, Saved $12.80) | | |
| 40 | 963094 | 16" GREEN PREMIUM PLASTIC SAUCER (40/CS) | $2.28 | $91.20 |
| | | (Was $3.09, Saved $32.40) | | |

## Total:   $2,735.88

STRATEGIC 00025

EXHIBIT 18
PAGE 252

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

| | |
|---|---|
| Sub Total: | $2,524.81 |
| Sales Tax: | $211.07 |
| Total: | $2,735.88 |

| Payments | Amount |
|----------|--------|
| VISA | $2,735.88 |
| | $2,735.88 |

Card Number: XXXX....2439, Authorization: 804466, Amount: $2,735.88

X _____

Total Saved: $1,109.78

Paid for: 10 Magnum Hoods

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

## Total: $2,735.88

**STRATEGIC.00026**

EXHIBIT 18
PAGE 253

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 80207 | House & Garden Soil Nutrient A & B (together) -- 20 Liters (Was $209.99, Saved $81.89) | $128.10 | $128.10 |
| 1 | 80185 | House & Garden Drip Clean 1 Liter (Was $59.99, Saved $23.39) | $36.60 | $36.60 |
| 1 | 80214 | House & Garden Roots Excelurator -- 1 Liter (Was $269.99, Saved $105.29) | $164.70 | $164.70 |
| 1 | 252096 | House & Garden Amino Treatment 1L (Was $189.99, Saved $74.09) | $115.90 | $115.90 |
| 1 | 80216 | House & Garden Multi Zen -- 5 Liters (Was $169.99, Saved $66.29) | $103.70 | $103.70 |
| 1 | 80219 | House & Garden Bud XL -- 5 Liters (Was $224.99, Saved $87.74) | $137.25 | $137.25 |
| 1 | 80221 | House & Garden Top Booster - 500 milliliter (Was $21.99, Saved $8.87) | $13.12 | $13.12 |
| 1 | 578792 | House & Garden Top Shooter 1L (Was $224.99, Saved $88.35) | $136.64 | $136.64 |
| 1 | 80182 | House & Garden Magic Green -- 1 Liter (Was $95.99, Saved $37.43) | $58.56 | $58.56 |
| 1 | 931677 | House & Garden Nitrogen Boost 1L (12cs) (Was $62.00, Saved $2.01) | $59.99 | $59.99 |

| | |
|---|---|
| Sub Total: | $954.56 |
| Sales Tax: | $79.80 |
| Total: | $1,034.36 |

| Payments | Amount |
|----------|--------|
| VISA | $1,034.36 |
| | $1,034.36 |

## Total:    $1,034.36

STRATEGIC.00027

EXHIBIT 18
PAGE 254

# Receipt

# Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|

Card Number: XXXX....2439, Authorization: 443660, Amount: $1,034.36

X _____

Total Saved: $575.35

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:**        **$1,034.36**

STRATEGIC.00028

EXHIBIT 18
PAGE 255

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| 1 | 421779 | TITAN ATLAS 2 Pre-set C02 Moniter (Was $299.95, Saved $54.95) | $245.00 | $245.00 |
| 1 | 9900758 | C.A.P. (Custom Automated Products) - Atmosphere Co2 Controller, Day - (CS 1) (Was $216.95, Saved $56.95) | $160.00 | $160.00 |
| 1 | 569909 | 20lb Tank (Was $175.00, Saved $35.00) | $140.00 | $140.00 |
| 1 | 945216 | TITAN CONTROLS - CO2 REGULATOR (Was $114.95, Saved $28.70) | $86.25 | $86.25 |
| 1 | 828850 | Titan Controls CO2 Regulatior System w/ 25 ft Tubing (Was $17.95, Saved $4.25) | $13.70 | $13.70 |
| -1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | ($63.00) |
| -1 | 050487 | Bluelab Soil pH Meter | $178.75 | ($178.75) |
| 1 | 370878 | Bluelab Soil PH Pen (Was $185.00, Saved $50.00) | $135.00 | $135.00 |

|  |  |
|---|---|
| Sub Total: | $538.20 |
| Sales Tax: | $45.00 |
| Total: | $583.20 |

| Payments | Amount |
|---|---|
| VISA | $583.20 |
| | $583.20 |

**Total:    $583.20**

STRATEGIC 00029

EXHIBIT 18
PAGE 256

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

Card Number: XXXX....2439, Authorization: 671415, Amount: $583.20

X _____

Total Saved: $147.65

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:** **$583.20**

**STRATEGIC 00030**

EXHIBIT 18
PAGE 257

# #6

STRATEGIC 00031

EXHIBIT 18
PAGE 258

# Receipt

| DATE | TICKET |
|------|--------|
| Tuesday, March 11, 2014 | 27074 |
| 6:35:48 PM | Page 1 of 1 |

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 10 | 355179 | Sun - Magnum XXXL -8" Air-Cooled Reflector (Was $257.95, Saved $720.10) | $185.94 | $1,859.40 |

| | |
|---|---|
| Sub Total: | $1,859.40 |
| Sales Tax: | $155.44 |
| Total: | $2,014.84 |

| Payments | Amount |
|----------|--------|
| VISA | $2,014.84 |
| | $2,014.84 |

Card Number: XXXX....2439, Authorization: 691719, Amount: $2,014.84

X _____

Total Saved: $720.10

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total: $2,014.84**

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 10 | 708415 | Sun System Hardcore Remote Ballast 1000w HPS/MH 120/240 (Was $114.95, Saved $249.50) | $90.00 | $900.00 |
| 10 | 066965 | EYE HORTILUX - HPS Enhanced 1000 Watt - LU1000B/HTL/EN (Was $129.95, Saved $549.50) | $75.00 | $750.00 |
| 1 | 038877 | Titan Controls Helios 13 - 16 Light Controller with Timer (Was $849.95, Saved $130.01) | $719.94 | $719.94 |

| | |
|---|---|
| Sub Total: | $2,369.94 |
| Sales Tax: | $198.13 |
| Total: | $2,568.07 |

| Payments | Amount |
|----------|--------|
| VISA | $2,568.07 |
| | $2,568.07 |

Card Number: XXXX....2439, Authorization: 547078, Amount: $2,568.07

X _____

Total Saved: $929.01

## Total:     $2,568.07

STRATEGIC.00033

EXHIBIT 18
PAGE 260

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:    $2,568.07**

STRATEGIC.00034

EXHIBIT 18
PAGE 261

# Receipt

# Reprint

BILL TO:

BearPot Inc BearPot Inc
BearPot Inc

SHIP TO:

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|-----------|--------|
| 1 | 1334 | PHRESH FILTER 10X39 1400 CFM (Was $304.95, Saved $111.70) | $193.25 | $193.25 |
| 10 | 199755 | PROGRIP (Rope Ratchet) - Light Hangers 1/8" - 1 pair (Was $16.95, Saved $62.10) | $10.74 | $107.40 |
| 3 | 557502 | Ideal Air Silver/Silver Ducting 10x25 (Was $34.95, Saved $35.91) | $22.98 | $68.94 |
| 4 | 820104 | eco plus 18" wall mount fan (Was $57.95, Saved $40.04) | $47.94 | $191.76 |
| 4 | 752716 | TITAN CONTROLS - Apollo 8 (Was $11.95, Saved $12.04) | $8.94 | $35.76 |
| 1 | 718840 | Can-Fan Max Fan 10in (Was $306.65, Saved $85.91) | $220.74 | $220.74 |
| 2 | 770 | Sunshine Mix #4 Aggregate Plus - 3.8 cu.ft. (Was $52.95, Saved $27.92) | $38.99 | $77.98 |
| 2 | 053674 | FOX FARM - Ocean Forest Soil - 1.5cu.ft. Bag (Was $20.95, Saved $11.98) | $14.96 | $29.92 |
| 2 | 394722 | MOTHER EARTH - Perlite #4 - 4cu. ft. bag (Was $45.95, Saved $35.90) | $28.00 | $56.00 |
| 40 | 822983 | SMART POT 5 GALLON (50CS) (Was $5.95, Saved $38.00) | $5.00 | $200.00 |
| 40 | 022523 | SMART POT 1 GALLON (100CS) (Was $2.19, Saved $7.60) | $2.00 | $80.00 |
| 2 | 279 | Panda Film Roll - 10' X 100' (Was $92.95, Saved $55.90) | $65.00 | $130.00 |
| 3 | 379433 | Wind King 8" Inline Fan 745 C.F.M. 1.7 Amps (Was $159.95, Saved $224.85) | $85.00 | $255.00 |
| 1 | 050487 | Bluelab Soil pH Meter (Was $240.00, Saved $61.25) | $178.75 | $178.75 |
| 1 | 147909 | MONDI - Utilty Sump Pump 1200x | $81.19 | $81.19 |

## Total:     $2,735.88

STRATEGIC.00035

EXHIBIT 18
PAGE 262

# Receipt

## Reprint

| BILL TO: | SHIP TO: |
|----------|----------|
| BearPot Inc BearPot Inc | |
| BearPot Inc | |

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| | | (Was $108.95, Saved $27.76) | | |
| 1 | 932 | ECOPLUS - Commercial Air 1 - 18 watts - Single outlet 38 Liter/min | $38.13 | $38.13 |
| | | (Was $54.49, Saved $16.36) | | |
| 2 | 416534 | DEEP WATER - Double Air Diffuser - 1/4" ID | $27.50 | $55.00 |
| | | (Was $36.95, Saved $18.90) | | |
| 10 | 923964 | 3/16 ID BLACK TUBING PER FOOT | $0.10 | $1.00 |
| | | (Was $0.15, Saved $0.50) | | |
| 1 | 609576 | Twist Tie diespenser with cutter - 164 ft | $2.15 | $2.15 |
| | | (Was $3.59, Saved $1.44) | | |
| 4 | 680670 | EYE HORTILUX - 1000 Super MH - U/BT-37 HTL | $55.00 | $220.00 |
| | | (Was $86.95, Saved $127.80) | | |
| 1 | 777049 | Grower's Edge Dry Rack w/ 3 in Opening (12/Cs) | $29.94 | $29.94 |
| | | (Was $39.95, Saved $10.01) | | |
| 1 | 531664 | FISKARS - Easy Pour Watering Can 2.6 Gallon | $19.81 | $19.81 |
| | | (Was $26.95, Saved $7.14) | | |
| 1 | 765868 | ECOPLUS - 64 oz/1.9 Liter Spray Bottle (SPRAYER) | $5.94 | $5.94 |
| | | (Was $9.49, Saved $3.55) | | |
| 3 | 891431 | Tarp Zip-Up | $8.60 | $25.80 |
| | | (Was $12.29, Saved $11.07) | | |
| 1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | $63.00 |
| | | (Was $83.95, Saved $20.95) | | |
| 1 | 126515 | Fiskars Micro Tip Blades Pruning Snip 2/Pack (6/Cs) | $24.95 | $24.95 |
| | | (Was $32.95, Saved $8.00) | | |
| 40 | 661262 | 10" GREEN PREMIUM PLASTIC SAUCER | $1.03 | $41.20 |
| | | (Was $1.35, Saved $12.80) | | |
| 40 | 963094 | 16" GREEN PREMIUM PLASTIC SAUCER (40/CS) | $2.28 | $91.20 |
| | | (Was $3.09, Saved $32.40) | | |

## Total:   $2,735.88

STRATEGIC 00036

EXHIBIT 18
PAGE 263

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

| | |
|---|---|
| Sub Total: | $2,524.81 |
| Sales Tax: | $211.07 |
| Total: | $2,735.88 |

| Payments | Amount |
|----------|--------|
| VISA | $2,735.88 |
| | $2,735.88 |

Card Number: XXXX....2439, Authorization: 804466, Amount: $2,735.88

X _____

Total Saved: $1,109.78

Paid for: 10 Magnum Hoods

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

## Total:      $2,735.88

STRATEGIC.00037

EXHIBIT 18
PAGE 264

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 80207 | House & Garden Soil Nutrient A & B (together) -- 20 Liters (Was $209.99, Saved $81.89) | $128.10 | $128.10 |
| 1 | 80185 | House & Garden Drip Clean 1 Liter (Was $59.99, Saved $23.39) | $36.60 | $36.60 |
| 1 | 80214 | House & Garden Roots Excelurator -- 1 Liter (Was $269.99, Saved $105.29) | $164.70 | $164.70 |
| 1 | 252096 | House & Garden Amino Treatment 1L (Was $189.99, Saved $74.09) | $115.90 | $115.90 |
| 1 | 80216 | House & Garden Multi Zen -- 5 Liters (Was $169.99, Saved $66.29) | $103.70 | $103.70 |
| 1 | 80219 | House & Garden Bud XL -- 5 Liters (Was $224.99, Saved $87.74) | $137.25 | $137.25 |
| 1 | 80221 | House & Garden Top Booster - 500 milliliter (Was $21.99, Saved $8.87) | $13.12 | $13.12 |
| 1 | 578792 | House & Garden Top Shooter 1L (Was $224.99, Saved $88.35) | $136.64 | $136.64 |
| 1 | 80182 | House & Garden Magic Green -- 1 Liter (Was $95.99, Saved $37.43) | $58.56 | $58.56 |
| 1 | 931677 | House & Garden Nitrogen Boost 1L (12cs) (Was $62.00, Saved $2.01) | $59.99 | $59.99 |

| | |
|---|---|
| Sub Total: | $954.56 |
| Sales Tax: | $79.80 |
| Total: | $1,034.36 |

| Payments | Amount |
|----------|--------|
| VISA | $1,034.36 |
| | $1,034.36 |

**Total:  $1,034.36**

STRATEGIC.00038

EXHIBIT 18
PAGE 265

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

Card Number: XXXX....2439, Authorization: 443660, Amount: $1,034.36

X _____

Total Saved: $575.35

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:    $1,034.36**

**STRATEGIC.00039**

EXHIBIT 18
PAGE 266

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 421779 | TITAN ATLAS 2 Pre-set C02 Moniter (Was $299.95, Saved $54.95) | $245.00 | $245.00 |
| 1 | 9900758 | C.A.P. (Custom Automated Products) - Atmosphere Co2 Controller, Day - (CS 1) (Was $216.95, Saved $56.95) | $160.00 | $160.00 |
| 1 | 569909 | 20lb Tank (Was $175.00, Saved $35.00) | $140.00 | $140.00 |
| 1 | 945216 | TITAN CONTROLS - CO2 REGULATOR (Was $114.95, Saved $28.70) | $86.25 | $86.25 |
| 1 | 828850 | Titan Controls CO2 Regulatior System w/ 25 ft Tubing (Was $17.95, Saved $4.25) | $13.70 | $13.70 |
| -1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | ($63.00) |
| -1 | 050487 | Bluelab Soil pH Meter | $178.75 | ($178.75) |
| 1 | 370878 | Bluelab Soil PH Pen (Was $185.00, Saved $50.00) | $135.00 | $135.00 |

| | |
|---|---|
| Sub Total: | $538.20 |
| Sales Tax: | $45.00 |
| Total: | $583.20 |

| Payments | Amount |
|----------|--------|
| VISA | $583.20 |
| | $583.20 |

**Total:** **$583.20**

STRATEGIC 00040

EXHIBIT 18
PAGE 267

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

Card Number: XXXX....2439, Authorization: 671415, Amount: $583.20

X _____

Total Saved: $147.65

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:** **$583.20**

STRATEGIC 00041

EXHIBIT 18
PAGE 268

# #11

STRATEGIC.00042

EXHIBIT 18
PAGE 269

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 10 | 355179 | Sun - Magnum XXXL -8" Air-Cooled Reflector (Was $257.95, Saved $720.10) | $185.94 | $1,859.40 |

| | |
|--|--|
| Sub Total: | $1,859.40 |
| Sales Tax: | $155.44 |
| Total: | $2,014.84 |

| Payments | Amount |
|----------|--------|
| VISA | $2,014.84 |
| | $2,014.84 |

Card Number: XXXX....2439, Authorization: 691719, Amount: $2,014.84

X _____

Total Saved: $720.10

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:**     **$2,014.84**

STRATEGIC 00043

EXHIBIT 18
PAGE 270

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 10 | 708415 | Sun System Hardcore Remote Ballast 1000w HPS/MH 120/240 (Was $114.95, Saved $249.50) | $90.00 | $900.00 |
| 10 | 066965 | EYE HORTILUX - HPS Enhanced 1000 Watt - LU1000B/HTL/EN (Was $129.95, Saved $549.50) | $75.00 | $750.00 |
| 1 | 038877 | Titan Controls Helios 13 - 16 Light Controller with Timer (Was $849.95, Saved $130.01) | $719.94 | $719.94 |

| | |
|---|---|
| Sub Total: | $2,369.94 |
| Sales Tax: | $198.13 |
| Total: | $2,568.07 |

| Payments | Amount |
|----------|--------|
| VISA | $2,568.07 |
| | $2,568.07 |

Card Number: XXXX....2439, Authorization: 547078, Amount: $2,568.07

X _____

Total Saved: $929.01

## Total:     $2,568.07

STRATEGIC 00044

EXHIBIT 18
PAGE 271

# Receipt

# Reprint

BILL TO:

BearPot Inc BearPot Inc
BearPot Inc

SHIP TO:

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:     $2,568.07**

**STRATEGIC 00045**

EXHIBIT 18
PAGE 272

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 1334 | PHRESH FILTER 10X39 1400 CFM (Was $304.95, Saved $111.70) | $193.25 | $193.25 |
| 10 | 199755 | PROGRIP (Rope Ratchet) - Light Hangers 1/8" - 1 pair (Was $16.95, Saved $62.10) | $10.74 | $107.40 |
| 3 | 557502 | Ideal Air Silver/Silver Ducting 10x25 (Was $34.95, Saved $35.91) | $22.98 | $68.94 |
| 4 | 820104 | eco plus 18" wall mount fan (Was $57.95, Saved $40.04) | $47.94 | $191.76 |
| 4 | 752716 | TITAN CONTROLS - Apollo 8 (Was $11.95, Saved $12.04) | $8.94 | $35.76 |
| 1 | 718840 | Can-Fan Max Fan 10in (Was $306.65, Saved $85.91) | $220.74 | $220.74 |
| 2 | 770 | Sunshine Mix #4 Aggregate Plus - 3.8 cu.ft. (Was $52.95, Saved $27.92) | $38.99 | $77.98 |
| 2 | 053674 | FOX FARM - Ocean Forest Soil - 1.5cu.ft. Bag (Was $20.95, Saved $11.98) | $14.96 | $29.92 |
| 2 | 394722 | MOTHER EARTH - Perlite #4 - 4cu. ft. bag (Was $45.95, Saved $35.90) | $28.00 | $56.00 |
| 40 | 822983 | SMART POT 5 GALLON (50CS) (Was $5.95, Saved $38.00) | $5.00 | $200.00 |
| 40 | 022523 | SMART POT 1 GALLON (100CS) (Was $2.19, Saved $7.60) | $2.00 | $80.00 |
| 2 | 279 | Panda Film Roll - 10' X 100' (Was $92.95, Saved $55.90) | $65.00 | $130.00 |
| 3 | 379433 | Wind King 8" Inline Fan 745 C.F.M. 1.7 Amps (Was $159.95, Saved $224.85) | $85.00 | $255.00 |
| 1 | 050487 | Bluelab Soil pH Meter (Was $240.00, Saved $61.25) | $178.75 | $178.75 |
| 1 | 147909 | MONDI - Utilty Sump Pump 1200x | $81.19 | $81.19 |

## Total: $2,735.88

STRATEGIC 00046

EXHIBIT 18
PAGE 273

# Receipt

## Reprint

| BILL TO: | SHIP TO: |
|----------|----------|

BearPot Inc BearPot Inc
BearPot Inc

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| | | (Was $108.95, Saved $27.76) | | |
| 1 | 932 | ECOPLUS - Commercial Air 1 - 18 watts - Single outlet 38 Liter/min | $38.13 | $38.13 |
| | | (Was $54.49, Saved $16.36) | | |
| 2 | 416534 | DEEP WATER - Double Air Diffuser - 1/4" ID | $27.50 | $55.00 |
| | | (Was $36.95, Saved $18.90) | | |
| 10 | 923964 | 3/16 ID BLACK TUBING PER FOOT | $0.10 | $1.00 |
| | | (Was $0.15, Saved $0.50) | | |
| 1 | 609576 | Twist Tie diespenser with cutter - 164 ft | $2.15 | $2.15 |
| | | (Was $3.59, Saved $1.44) | | |
| 4 | 680670 | EYE HORTILUX - 1000 Super MH - U/BT-37 HTL | $55.00 | $220.00 |
| | | (Was $86.95, Saved $127.80) | | |
| 1 | 777049 | Grower's Edge Dry Rack w/ 3 in Opening (12/Cs) | $29.94 | $29.94 |
| | | (Was $39.95, Saved $10.01) | | |
| 1 | 531664 | FISKARS - Easy Pour Watering Can 2.6 Gallon | $19.81 | $19.81 |
| | | (Was $26.95, Saved $7.14) | | |
| 1 | 765868 | ECOPLUS - 64 oz/1.9 Liter Spray Bottle (SPRAYER) | $5.94 | $5.94 |
| | | (Was $9.49, Saved $3.55) | | |
| 3 | 891431 | Tarp Zip-Up | $8.60 | $25.80 |
| | | (Was $12.29, Saved $11.07) | | |
| 1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | $63.00 |
| | | (Was $83.95, Saved $20.95) | | |
| 1 | 126515 | Fiskars Micro Tip Blades Pruning Snip 2/Pack (6/Cs) | $24.95 | $24.95 |
| | | (Was $32.95, Saved $8.00) | | |
| 40 | 661262 | 10" GREEN PREMIUM PLASTIC SAUCER | $1.03 | $41.20 |
| | | (Was $1.35, Saved $12.80) | | |
| 40 | 963094 | 16" GREEN PREMIUM PLASTIC SAUCER (40/CS) | $2.28 | $91.20 |
| | | (Was $3.09, Saved $32.40) | | |

## Total:    $2,735.88

STRATEGIC.00047

EXHIBIT 18
PAGE 274

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

| | |
|---|---|
| Sub Total: | $2,524.81 |
| Sales Tax: | $211.07 |
| Total: | $2,735.88 |

| Payments | Amount |
|----------|--------|
| VISA | $2,735.88 |
| | $2,735.88 |

Card Number: XXXX....2439, Authorization: 804466, Amount: $2,735.88

X _____

Total Saved: $1,109.78

Paid for: 10 Magnum Hoods

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:    $2,735.88**

STRATEGIC 00048

EXHIBIT 18
PAGE 275

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| 1 | 80207 | House & Garden Soil Nutrient A & B (together) -- 20 Liters (Was $209.99, Saved $81.89) | $128.10 | $128.10 |
| 1 | 80185 | House & Garden Drip Clean 1 Liter (Was $59.99, Saved $23.39) | $36.60 | $36.60 |
| 1 | 80214 | House & Garden Roots Excelurator -- 1 Liter (Was $269.99, Saved $105.29) | $164.70 | $164.70 |
| 1 | 252096 | House & Garden Amino Treatment 1L (Was $189.99, Saved $74.09) | $115.90 | $115.90 |
| 1 | 80216 | House & Garden Multi Zen -- 5 Liters (Was $169.99, Saved $66.29) | $103.70 | $103.70 |
| 1 | 80219 | House & Garden Bud XL -- 5 Liters (Was $224.99, Saved $87.74) | $137.25 | $137.25 |
| 1 | 80221 | House & Garden Top Booster - 500 milliliter (Was $21.99, Saved $8.87) | $13.12 | $13.12 |
| 1 | 578792 | House & Garden Top Shooter 1L (Was $224.99, Saved $88.35) | $136.64 | $136.64 |
| 1 | 80182 | House & Garden Magic Green -- 1 Liter (Was $95.99, Saved $37.43) | $58.56 | $58.56 |
| 1 | 931677 | House & Garden Nitrogen Boost 1L (12cs) (Was $62.00, Saved $2.01) | $59.99 | $59.99 |

| | |
|---|---|
| Sub Total: | $954.56 |
| Sales Tax: | $79.80 |
| Total: | $1,034.36 |

| Payments | Amount |
|---|---|
| VISA | $1,034.36 |
| | $1,034.36 |

## Total:     $1,034.36

**STRATEGIC 00049**

EXHIBIT 18
PAGE 276

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
|           |       |     |      |     |        | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|

Card Number: XXXX....2439, Authorization: 443660, Amount: $1,034.36

X _____

Total Saved: $575.35

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:    $1,034.36**

STRATEGIC 00050

EXHIBIT 18
PAGE 277

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|-----------|-------|-----|------|-----|--------|-------------|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|----------|------|-------------|------------|--------|
| 1 | 421779 | TITAN ATLAS 2 Pre-set C02 Moniter (Was $299.95, Saved $54.95) | $245.00 | $245.00 |
| 1 | 9900758 | C.A.P. (Custom Automated Products) - Atmosphere Co2 Controller, Day - (CS 1) (Was $216.95, Saved $56.95) | $160.00 | $160.00 |
| 1 | 569909 | 20lb Tank (Was $175.00, Saved $35.00) | $140.00 | $140.00 |
| 1 | 945216 | TITAN CONTROLS - CO2 REGULATOR (Was $114.95, Saved $28.70) | $86.25 | $86.25 |
| 1 | 828850 | Titan Controls CO2 Regulatior System w/ 25 ft Tubing (Was $17.95, Saved $4.25) | $13.70 | $13.70 |
| -1 | 188286 | TITAN CONTROLS - Zephyr 1 - Day/Night Temperature Controller | $63.00 | ($63.00) |
| -1 | 050487 | Bluelab Soil pH Meter | $178.75 | ($178.75) |
| 1 | 370878 | Bluelab Soil PH Pen (Was $185.00, Saved $50.00) | $135.00 | $135.00 |

|  |  |
|--|--|
| Sub Total: | $538.20 |
| Sales Tax: | $45.00 |
| Total: | $583.20 |

| Payments | Amount |
|----------|--------|
| VISA | $583.20 |
| | $583.20 |

## Total:  $583.20

STRATEGIC 00051

EXHIBIT 18
PAGE 278

# Receipt

## Reprint

**BILL TO:**

BearPot Inc BearPot Inc
BearPot Inc

**SHIP TO:**

| PO NUMBER | TERMS | REP | SHIP | VIA | F.O.B. | Customer ID |
|---|---|---|---|---|---|---|
| | | | | | | BearPot Inc |

| QUANTITY | ITEM | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|

Card Number: XXXX....2439, Authorization: 671415, Amount: $583.20

X _____

Total Saved: $147.65

No returns or exchanges on special order items.
No returns or exchanges on liquids, medium, or open-boxed items.

**Total:** **$583.20**

STRATEGIC 00052

EXHIBIT 18
PAGE 279

# STOCK PURCHASE AGREEMENT

**THIS STOCK PURCHASE AGREEMENT** (the "Agreement"), is made and entered into as of this 5th day of February, 2014, by and among Strategic Global Investments, Inc., a Delaware corporation, having an address of 8451 Miralani Drive, Suite D, San Diego, California 92126 (the "Purchaser"), and Robert Coffy, having an address of 40723 Mountain Pride Drive, Murrieta, California 92562, (the "Seller").

## WITNESSETH:

**WHEREAS,** the Seller owns one (1) share of the common stock (the "Share") of BearPot, Inc., a Colorado corporation (the "Company), which is the only issued and outstanding share of stock of the Company;

**WHEREAS,** the Sellers desire to sell, and Purchaser desires to purchase, the Share in accordance with the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual premises herein contained and intending to be legally bound hereby, Purchaser and Sellers agree as follows:

## SECTION 1. PURCHASE AND SALE

1.01   **Purchase of Share.** Subject to the terms and conditions of this Agreement, Seller agrees to sell, transfer and assign to Purchaser, all of Seller's right, title and interest in and to the Share, and Purchaser agrees to purchase the Share from Seller. At the Closing (as hereinafter defined), any share certificate which represents the Share will be delivered to the Purchaser duly endorsed in blank for transfer, or if no share certificate exists, an assignment and bill of sale of the Share satisfactory in form to the Purchaser and executed by the Seller transferring the Share to Purchaser shall be delivered to Purchaser.

1.02   **Closing.** The closing will take place at a time and place to be agreed upon by the parties (the "Closing").

1.03   **Purchase Price.** The purchase price to be paid by Purchaser for the Share (the "Purchase Price") shall be Fifty Thousand and 00/100 Dollars ($50,000.00), which shall be paid by Purchaser as follows: $50,000 in cash.

(a) At the Closing, Purchaser will deliver to Seller $10,000 by check or wire transfer and the balance within 30 days from closing.

(b) Beginning on March 1, 2014 and on the first of each month thereafter for five (5) additional months, the Purchaser will deliver to Seller by check the amount of $2,000 for a total of $10,000.

## SECTION 2. REPRESENTATIONS AND WARRANTIES

1

STRATEGIC 00053

EXHIBIT 18
PAGE 280

2.01  **Representations and Warranties of Seller.**  Seller represents and warrants to Purchaser as follows:

(a)  **Authority.**  Seller has the right, power, capacity and authority to enter into and perform his obligations under this Agreement, including selling the Share, and consummate the transactions contemplated herein;

(b)  **Execution.**  This Agreement has been duly and validly executed and delivered by Seller and constitutes a valid and binding obligation of Seller enforceable against him in accordance with the terms set forth herein, except to the extent such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights of creditors generally, and by general principles of equity;

(c)  **Shares.**  . The Shares are owned beneficially and of record solely by Seller free and clear of liens or encumbrances, and valid title to the Shares shall pass to Purchaser at the Closing, free and clear of liens or encumbrances;

(d)  **Consents.**  To the best of Seller's knowledge, no consent or approval of any person or entity is necessary for the sale of the Share to Purchaser as contemplated by this Agreement;

(e)  **Proceedings.**  To the best of Seller's knowledge, no action, suit, proceeding or order to restrain or prohibit the consummation of the transactions contemplated under this Agreement is currently pending or threatened;

(f)  **Assets.**  The assets the Company owns are: (a) equipment with a market value of $10,000 and (b) living plants that are healthy and growing and have a market value of $5,000 and training by the Seller in the field of cannabis cultivation, sales and assist in obtaining any and all new licenses and permits that may be required due to changes in Colorado law valued by the parties at $35,000.

(g)  **Real Property.**  The Company does not own any real property and is leasing the facility.

(h)  **Existing Liabilities.**  The Company does not have any liability or obligation of any nature (whether known or unknown and whether absolute, accrued, contingent, or otherwise) and will not have any at the time of the Closing;

(i)  **Employees.**  The Company has no employees but engages several independent contractors and consultants.

(j)  **Compliance with Laws.**

2

STRATEGIC.00054

EXHIBIT 18
PAGE 281

(i)     The Company has at all times been in compliance with every legal Requirement that is or was applicable to it or the conduct of its business or the ownership or use of any of its assets at the time of purchase.

(ii)     No event has occurred or circumstance exists that (with or without notice or lapse of time) (A) could constitute or result in a violation by the Company of, or a failure on the part of the Company to comply with, any legal requirement, or (B) could give rise to any obligation on the part of the Company to undertake, or to bear all or any portion of the cost of, any remedial action.

(iii)     The Company has not received any notice or other communication (whether oral or written) regarding (A) any actual, alleged, or potential violation of, or failure to comply with, any legal requirement, or (B) any actual, alleged, or potential obligation on the part of the Company to undertake, or to bear all or any portion of the cost of, any remedial action;

(iv)     The Company understands that there have been some changes to the Colorado laws and plans to comply with all of the laws of Colorado by applying and obtaining all licenses and permits that the new laws require with the help of Seller and Consultants hired by the company to provide such assistance. The Company will not sell any inventory until such laws are complied with.

(k)     **Environmental.**     To the knowledge of Seller, the proposed operations of the Company and/or its use of its assets do not violate any Legal requirement pertaining to the collection, transportation, storage, treatment, discharge, release, processing, handling, or disposal of substances that might pollute, contaminate, or be hazardous or toxic if present in the air, ground, or surface water, land or other parts of the environment or other wastes, including, without limitation (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§9601 et seq.), as amended from time to time ("CERCLA") (including, without limitation, as amended pursuant to the Superfund Amendments and Reauthorization Act of 1986), and such regulations promulgated under CERCLA, (b) the Resources Conservation and Recovery Act of 1976 (42 U.S.C. §§6901 et seq.), as amended from time to time ("RCRA") and such regulations promulgated under RCRA, and (c) any applicable federal, state, or local laws or regulations relating to the condition of the air, ground or surface water, land or other parts of the environment, to the release or potential release of any substance into the air, ground or surface water, land, or other parts of the environment (collectively, the "Applicable Environmental Laws"), and, to the knowledge of Seller, none of the proposed operations of the Company would constitute a violation of any of the applicable environmental laws that would have a material adverse effect on the financial condition, assets, business, or property of the Company taken as a whole; and

(l)     **Broker.**     Seller has not incurred any obligation or liability, contingent or otherwise, for any brokerage or finder's fee or agent's commission or other

3

STRATEGIC 00055

EXHIBIT 18
PAGE 282

similar payment in connection with this Agreement or the transaction contemplated hereby.

**2.02  Representations and Warranties of Purchaser.** Purchaser represents and warrants to Seller as follows:

(a)  **Authority.**  Purchaser has the right, power and authority to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby;

(b)  **Execution.**  This Agreement has been duly and validly executed and delivered by Purchaser and, when delivered, will constitute a valid and binding obligation of Purchaser enforceable in accordance with the terms set forth herein, except to the extent such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights of creditors generally, and by general principles of equity;

(c)  **Consents.**  To the best of Purchaser's knowledge, no consent or approval of any person or entity is necessary for the consummation by Purchaser of the transactions contemplated by this Agreement; and

(d)  **Proceedings.**  To the best of Purchaser's knowledge, no action, suit, proceeding or order to restrain or prohibit the consummation of the transactions contemplated under this Agreement is currently pending or threatened.

(e)  **Stock Restrictions.**  Purchaser acknowledges that he is aware that the Sale Shares have not been registered under the Securities Act of 1933, as amended, (the "Securities Act") nor under any state securities law. Purchaser further acknowledges that the Sale Shares cannot be sold or transferred except in compliance with the Securities Act and any applicable state securities law. Finally, Purchaser acknowledges that, as a result of the foregoing, the Sale Shares will bear a restrictive legend that will prevent their sale unless they are registered under the Securities Act or are sold under an exemption available thereunder.

**2.03  Survival.** The representations and warranties of the parties hereto contained in this Agreement shall survive the Closing and consummation of the transactions contemplated by this Agreement for a period of two (2) years from the Closing.

# SECTION 3. CONDITIONS TO PURCHASER'S OBLIGATIONS

**3.01**  The obligation of Purchaser to consummate the transaction contemplated by this Agreement is subject, in the sole discretion of Purchaser, to the satisfaction, on or prior to the Closing, of each of the following conditions (any of which may, in the sole discretion of Purchaser, be waived in whole or in part):

4

STRATEGIC.00056

EXHIBIT 18
PAGE 283

(a)     <u>Representations, Warranties and Obligations.</u> All representations and warranties of Seller contained in this Agreement shall be true and correct in all respects as of the Closing, and Seller shall have performed all obligations to be performed by it as of the Closing pursuant to this Agreement.

(b)     <u>Consents.</u> All approvals, consents, licenses, registrations, authorizations and waivers necessary, including those of lenders, governmental authorities and others shall have been obtained, to permit Seller to transfer the Shares pursuant to this Agreement.

(c)     <u>Good Standing.</u> Purchaser shall have received a good standing certificate from the Colorado Department of State, showing the Company to be in good standing.

(d)     <u>Changes.</u> There shall not have been any material adverse change in the condition of the assets of the Company prior to the Closing.

## SECTION 4. POST-CLOSING MATTERS

4.    <u>Funding By Purchaser.</u> After the Closing, Purchaser shall contribute to the Company the sum of $2,000 per month for 5 months starting on March 1, 2014 and on the first of each month for the next 4 months thereafter.

## SECTION 5. MISCELLANEOUS

5.01    <u>Captions.</u> The captions of the various sections and subsections used herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement.

5.02    <u>Notices.</u> Any notice given hereunder by a party to the other party shall be in writing and shall be given either personally or sent by registered or certified mail, return receipt requested, which shall be addressed to the addresses of the parties set forth in the opening paragraph of this Agreement, or to such other address as may be designated by them. Any notice will be deemed delivered upon receipt thereof by the receiving party or on refusal of such receiving party to accept such notice.

5.03    <u>Amendments; Applicable Law.</u> The provisions of this Agreement may not be modified, amended, or waived except by a writing, executed by the parties hereto. This Agreement and all documents given in connection herewith shall be construed in accordance with the internal laws of the State of California without giving effect to the conflicts of laws principles thereof. Should any court find any provision of this Agreement to be less than fully enforceable due to its breadth or restrictiveness, or for any other reason, the parties hereto intend that the court shall enforce the remaining provision to the full extent permissible.

5.04    <u>Binding Effect and Assignment.</u> This Agreement shall inure to the benefit of, and shall be binding upon the parties hereto and their respective heirs, legal representatives,

EXHIBIT 18
PAGE 284

successors and permitted assigns. This Agreement may not be transferred, assigned, pledged or hypothecated by either party without the prior written consent of the other party.

    5.05   **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

    5.06   **Entire Agreement.** This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes any and all prior or contemporaneous oral or written understandings, negotiations or communications on behalf of the parties hereto.

STRATEGIC 00058

EXHIBIT 18
PAGE 285

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first above written.

SELLER:

Robert Coffy

PURCHASER:
Strategic Global Investments, Inc.

By: _____
Andrew Fellner, President

7

STRATEGIC.00059

EXHIBIT 18
PAGE 286

# #12

STRATEGIC 00060

EXHIBIT 18
PAGE 287

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement"), is made and entered into as of this 5th day of February, 2014, by and among Strategic Global Investments, Inc., a Delaware corporation, having an address of 8451 Miralani Drive, Suite D, San Diego, California 92126 (the "Purchaser"), and Robert Coffy, having an address of 40723 Mountain Pride Drive, Murrieta, California 92562, (the "Seller").

### WITNESSETH:

WHEREAS, the Seller owns one (1) share of the common stock (the "Share") of BearPot, Inc., a Colorado corporation (the "Company), which is the only issued and outstanding share of stock of the Company;

WHEREAS, the Sellers desire to sell, and Purchaser desires to purchase, the Share in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual premises herein contained and intending to be legally bound hereby, Purchaser and Sellers agree as follows:

### SECTION 1. PURCHASE AND SALE

**1.01** **Purchase of Share.** Subject to the terms and conditions of this Agreement, Seller agrees to sell, transfer and assign to Purchaser, all of Seller's right, title and interest in and to the Share, and Purchaser agrees to purchase the Share from Seller. At the Closing (as hereinafter defined), any share certificate which represents the Share will be delivered to the Purchaser duly endorsed in blank for transfer, or if no share certificate exists, an assignment and bill of sale of the Share satisfactory in form to the Purchaser and executed by the Seller transferring the Share to Purchaser shall be delivered to Purchaser.

**1.02** **Closing.** The closing will take place at a time and place to be agreed upon by the parties (the "Closing").

**1.03** **Purchase Price.** The purchase price to be paid by Purchaser for the Share (the "Purchase Price") shall be Fifty Thousand and 00/100 Dollars ($50,000.00), which shall be paid by Purchaser as follows: $50,000 in cash.

(a) At the Closing, Purchaser will deliver to Seller $10,000 by check or wire transfer and the balance within 30 days from closing.

(b) Beginning on March 1, 2014 and on the first of each month thereafter for five (5) additional months, the Purchaser will deliver to Seller by check the amount of $2,000 for a total of $10,000.

### SECTION 2. REPRESENTATIONS AND WARRANTIES

1

STRATEGIC 00061

EXHIBIT 18
PAGE 288

**2.01   Representations and Warranties of Seller.**   Seller represents and warrants to Purchaser as follows:

     (a)   **Authority.**   Seller has the right, power, capacity and authority to enter into and perform his obligations under this Agreement, including selling the Share, and consummate the transactions contemplated herein;

     (b)   **Execution.**   This Agreement has been duly and validly executed and delivered by Seller and constitutes a valid and binding obligation of Seller enforceable against him in accordance with the terms set forth herein, except to the extent such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights of creditors generally, and by general principles of equity;

     (c)   **Shares.**   . The Shares are owned beneficially and of record solely by Seller free and clear of liens or encumbrances, and valid title to the Shares shall pass to Purchaser at the Closing, free and clear of liens or encumbrances;

     (d)   **Consents.**   To the best of Seller's knowledge, no consent or approval of any person or entity is necessary for the sale of the Share to Purchaser as contemplated by this Agreement;

     (e)   **Proceedings.**   To the best of Seller's knowledge, no action, suit, proceeding or order to restrain or prohibit the consummation of the transactions contemplated under this Agreement is currently pending or threatened;

     (f)   **Assets.**   The assets the Company owns are: (a) equipment with a market value of $10,000 and (b) living plants that are healthy and growing and have a market value of $5,000 and training by the Seller in the field of cannabis cultivation, sales and assist in obtaining any and all new licenses and permits that may be required due to changes in Colorado law valued by the parties at $35,000.

     (g)   **Real Property.**   The Company does not own any real property and is leasing the facility.

     (h)   **Existing Liabilities.**   The Company does not have any liability or obligation of any nature (whether known or unknown and whether absolute, accrued, contingent, or otherwise) and will not have any at the time of the Closing;

     (i)   **Employees.**   The Company has no employees but engages several independent contractors and consultants.

     (j)   **Compliance with Laws.**

2

**STRATEGIC 00062**

EXHIBIT 18
PAGE 289

(i)    The Company has at all times been in compliance with every legal Requirement that is or was applicable to it or the conduct of its business or the ownership or use of any of its assets at the time of purchase.

(ii)    No event has occurred or circumstance exists that (with or without notice or lapse of time) (A) could constitute or result in a violation by the Company of, or a failure on the part of the Company to comply with, any legal requirement, or (B) could give rise to any obligation on the part of the Company to undertake, or to bear all or any portion of the cost of, any remedial action.

(iii)    The Company has not received any notice or other communication (whether oral or written) regarding (A) any actual, alleged, or potential violation of, or failure to comply with, any legal requirement, or (B) any actual, alleged, or potential obligation on the part of the Company to undertake, or to bear all or any portion of the cost of, any remedial action:

(iv)    The Company understands that there have been some changes to the Colorado laws and plans to comply with all of the laws of Colorado by applying and obtaining all licenses and permits that the new laws require with the help of Seller and Consultants hired by the company to provide such assistance. The Company will not sell any inventory until such laws are complied with.

(k)    **Environmental.**    To the knowledge of Seller, the proposed operations of the Company and/or its use of its assets do not violate any Legal requirement pertaining to the collection, transportation, storage, treatment, discharge, release, processing, handling, or disposal of substances that might pollute, contaminate, or be hazardous or toxic if present in the air, ground, or surface water, land or other parts of the environment or other wastes, including, without limitation (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§9601 et seq.), as amended from time to time ("CERCLA") (including, without limitation, as amended pursuant to the Superfund Amendments and Reauthorization Act of 1986), and such regulations promulgated under CERCLA, (b) the Resources Conservation and Recovery Act of 1976 (42 U.S.C. §§6901 et seq.), as amended from time to time ("RCRA") and such regulations promulgated under RCRA, and (c) any applicable federal, state, or local laws or regulations relating to the condition of the air, ground or surface water, land or other parts of the environment, to the release or potential release of any substance into the air, ground or surface water, land, or other parts of the environment (collectively, the "Applicable Environmental Laws"), and, to the knowledge of Seller, none of the proposed operations of the Company would constitute a violation of any of the applicable environmental laws that would have a material adverse effect on the financial condition, assets, business, or property of the Company taken as a whole; and

(l)    **Broker.**    Seller has not incurred any obligation or liability, contingent or otherwise, for any brokerage or finder's fee or agent's commission or other

3

**STRATEGIC 00063**

EXHIBIT 18
PAGE 290

similar payment in connection with this Agreement or the transaction contemplated hereby.

**2.02** **Representations and Warranties of Purchaser.** Purchaser represents and warrants to Seller as follows:

    (a)   **Authority.** Purchaser has the right, power and authority to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby;

    (b)   **Execution.** This Agreement has been duly and validly executed and delivered by Purchaser and, when delivered, will constitute a valid and binding obligation of Purchaser enforceable in accordance with the terms set forth herein, except to the extent such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights of creditors generally, and by general principles of equity;

    (c)   **Consents.** To the best of Purchaser's knowledge, no consent or approval of any person or entity is necessary for the consummation by Purchaser of the transactions contemplated by this Agreement; and

    (d)   **Proceedings.** To the best of Purchaser's knowledge, no action, suit, proceeding or order to restrain or prohibit the consummation of the transactions contemplated under this Agreement is currently pending or threatened.

    (e)   **Stock Restrictions.** Purchaser acknowledges that he is aware that the Sale Shares have not been registered under the Securities Act of 1933, as amended, (the "Securities Act") nor under any state securities law. Purchaser further acknowledges that the Sale Shares cannot be sold or transferred except in compliance with the Securities Act and any applicable state securities law. Finally, Purchaser acknowledges that, as a result of the foregoing, the Sale Shares will bear a restrictive legend that will prevent their sale unless they are registered under the Securities Act or are sold under an exemption available thereunder.

**2.03** **Survival.** The representations and warranties of the parties hereto contained in this Agreement shall survive the Closing and consummation of the transactions contemplated by this Agreement for a period of two (2) years from the Closing.

# SECTION 3. CONDITIONS TO PURCHASER'S OBLIGATIONS

**3.01** The obligation of Purchaser to consummate the transaction contemplated by this Agreement is subject, in the sole discretion of Purchaser, to the satisfaction, on or prior to the Closing, of each of the following conditions (any of which may, in the sole discretion of Purchaser, be waived in whole or in part):

4

STRATEGIC 00064

EXHIBIT 18
PAGE 291

(a)  **Representations, Warranties and Obligations.** All representations and warranties of Seller contained in this Agreement shall be true and correct in all respects as of the Closing, and Seller shall have performed all obligations to be performed by it as of the Closing pursuant to this Agreement.

(b)  **Consents.** All approvals, consents. licenses, registrations, authorizations and waivers necessary, including those of lenders, governmental authorities and others shall have been obtained, to permit Seller to transfer the Shares pursuant to this Agreement.

(c)  **Good Standing.** Purchaser shall have received a good standing certificate from the Colorado Department of State, showing the Company to be in good standing.

(d)  **Changes.** There shall not have been any material adverse change in the condition of the assets of the Company prior to the Closing.

## SECTION 4. POST-CLOSING MATTERS

4.  **Funding By Purchaser.** After the Closing, Purchaser shall contribute to the Company the sum of $2,000 per month for 5 months starting on March 1, 2014 and on the first of each month for the next 4 months thereafter.

## SECTION 5. MISCELLANEOUS

5.01  **Captions.** The captions of the various sections and subsections used herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement.

5.02  **Notices.** Any notice given hereunder by a party to the other party shall be in writing and shall be given either personally or sent by registered or certified mail, return receipt requested, which shall be addressed to the addresses of the parties set forth in the opening paragraph of this Agreement, or to such other address as may be designated by them. Any notice will be deemed delivered upon receipt thereof by the receiving party or on refusal of such receiving party to accept such notice.

5.03  **Amendments; Applicable Law.** The provisions of this Agreement may not be modified, amended, or waived except by a writing, executed by the parties hereto. This Agreement and all documents given in connection herewith shall be construed in accordance with the internal laws of the State of California without giving effect to the conflicts of laws principles thereof. Should any court find any provision of this Agreement to be less than fully enforceable due to its breadth or restrictiveness, or for any other reason, the parties hereto intend that the court shall enforce the remaining provision to the full extent permissible.

5.04  **Binding Effect and Assignment.** This Agreement shall inure to the benefit of, and shall be binding upon the parties hereto and their respective heirs, legal representatives,

STRATEGIC 00065

EXHIBIT 18
PAGE 292

successors and permitted assigns. This Agreement may not be transferred, assigned, pledged or hypothecated by either party without the prior written consent of the other party.

     **5.05**   <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

     **5.06**   <u>Entire Agreement.</u> This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes any and all prior or contemporaneous oral or written understandings, negotiations or communications on behalf of the parties hereto.

6

**STRATEGIC 00066**

EXHIBIT 18
PAGE 293

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first above written.

SELLER:

_____
Robert Coffy

PURCHASER:
Strategic Global Investments, Inc.

By: _____
Andrew Fellner, President

7

EXHIBIT 18
PAGE 294

# #16

STRATEGIC.00068

EXHIBIT 18
PAGE 295

Company Disclosure and Information Statement to OTC Pink Market for Quarter Ended March 31, 2014:

*Marijuana Growing in Colorado*
In February, 2014, we bought all of the stock of bearpotinc Inc., a Colorado Corporation ("BearPot"), which proposes to grow and sell marijuana in the state of Colorado. We have acquired plants for this business. We hope that at some time in the future this subsidiary can be a source of revenue for the Company. However, the Company has no experience is any aspect of this business, and there is no way to anticipate when, if ever, the business can be profitable or, if it were to be so, how profitable it could be. Neither can we anticipate how much investment this business will require to make it profitable. Further, this business is heavily regulated by the state of Colorado by regulations which are being developed by the state. We expect the state to heavily regulate the business for the indefinite future, and we expect the regulations to change from time to time in ways which cannot be anticipated. Thus, we have no way of anticipating the costs of complying with the present or future regulations. We have hired professionals to assist us in complying with these regulations, and we expect to need their assistance for the indefinite future.

**STRATEGIC 00069**

EXHIBIT 18
PAGE 296

Company Supplemental Information to OTC Pink Market for Quarter Ended June 30, 2014:

*Marijuana Growing in Colorado*

In February, 2014, we bought all of the stock of Bearpot, Inc., a Colorado Corporation ("BearPot"), which proposed to grow and sell marijuana in the state of Colorado. We acquired 50 plants for this business. We had hoped that at some time in the future this subsidiary could be a source of revenue for the Company. However, the Company had no experience is any aspect of this business at the time it acquired the subsidiary. However, since the acquisition, we have learned enough from the attorney and consultants that we have hired and from other sources to conclude that we never want to be involved in the recreational marijuana business. Further, the current restrictions the State of Colorado is imposing on the sale of medical marijuana make it unlikely that we can turn that into a profitable business. We are evaluating what to do with Bearpot. While we are doing this, at some point after the State of Colorado revises its regulations once again in October, we may engage in sales of medical marijuana to 5 or 6 people, as permitted by the current regulations, in the interest of getting some revenue from our investment while we decide what to do with Bearpot. However, in no way do we wish to be engaged in any aspect of the marijuana business in the long term as it has become clear to us that the investment necessary to make the business successful and the extensive state regulations make this business not attractive to us.

**STRATEGIC.00070**

EXHIBIT 18
PAGE 297

# #20

STRATEGIC:0007.1

EXHIBIT 18
PAGE 298



The Industrial Hemp and Medical Marijuana Consulting Company, Inc.

## PROFESSIONAL CONSULTING
### SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "Agreement") is entered into the execution date signed below by and between THE INDUSTRIAL, HEMP AND MEDICAL MARIJUANA CONSULTING COMPANY, INC., hereinafter referred to as "IHMMCC", a Nevada Corporation, for itself and its heirs, executors, administrators, related entities and assigns, and Strategic Global Investments, Inc. whose signature is executed below, hereinafter referred to as "Client".

WHEREAS, Client is interested in obtaining professional consulting services in the industrial Hemp/Medical Marijuana Industry; and WHEREAS, IHMMCC has agreed to provide the following and other related professional services for Client: Consulting Services specific to the Industrial Hemp/Medical Marijuana Industry in the area of sales and marketing strategy, press releases, public company venues, and general industry specific business guidance.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and on the terms and conditions set forth herein, the parties have agreed and hereby do agree as follows:

### Services
IHMMCC shall provide to Client the professional services listed above on a continuing basis during the term of the Agreement.

### Engagement
The Client hereby engages IHMMCC to provide the professional services stated herein.

### Excluded Services and Liabilities
IHMMCC has no obligation or authority under this Agreement and shall not undertake, any activity which is prohibited by the federal government in regard to Industrial Hemp/Medical Marijuana regardless of the implementation of any State Medical Marijuana Program. Moreover, the parties acknowledge and agree that IHMMCC may not be held responsible for any damages, costs, or liabilities related to the any such services delivered by the Client related to Industrial Hemp/Medical Marijuana.

### Professional Services
IHMMCC shall use its best efforts to ensure that all professional services provided by IHMMCC are provided in compliance at all times with all applicable state and federal laws, rules, and regulations.

### Professional Fees
The Client and IHMMCC agree that the fees set forth in this Section are being paid to IHMMCC in consideration for its extensive business knowledge and experience in the Industrial Hemp/Medical Marijuana Industry and that such fees have been negotiated at arm's length and are fair, reasonable, and consistent with fair market value of the services furnished by IHMMCC.

### Payment Terms
The Client shall pay to IHMMCC a Professional Consulting Fee of one billion five hundred million (1,500,000,000) shares of Strategic Global Investments, Inc. (STBV) Common Stock restricted under rule 144 and fifty thousand dollars ($550,000), with fifty thousand dollars ($50,000.00) component paid in full by

IHMMCC is a wholly-owned subsidiary of Hearty, Inc. (OTC: HRTY)

Page 1 of 6

STRATEGIC.00072

EXHIBIT 18
PAGE 299

The issuance of five hundred thousand (500,000) shares of Strategic Capital Investments, Inc. (SCII) free trading Common Stock issued under Regulation A, Client using this exemption for a valid registration requirement for the shares in the free trading Stock used to be named as payment to HHMCC (IRC RULE 1.6042(5)).

Future annual fifty thousand dollars ($50,000.00) consultant payments will be made in addition common stock equaling fifty thousand dollars ($50,000.00) in value. The number of shares of common stock issued for said consultant for each renewal will be determined by dividing the fifty thousand dollars ($50,000.00) payment by the stock price on the day the agreement is signed by HHMCC.

Each of these stock certificates are considered one payment that is an annual payment due on the renewal date each year during the term of the contract. Said payment shall represent the cash fee the cost of the professional consulting services for one by the Client. If payment is not received within thirty (30) business days of the date of each payment due date, as covered as provided by HHMCC to Client will automatically terminate and Client will remain liable for the payment.

The Professional Consulting Services Fee may be adjusted from time to time with adjustment mutually approved by Client and HHMCC.

## Fee Agreement
The Client agrees to pay all HHMCC related Fees. HHMCC may discount or change Professional Consulting Services Fees for Renewal Terms by emailing the Client via the email address provided by the Client, or by otherwise notifying the Client in writing in advance of the applicable Renewal Term. This Agreement is personal to the Client and the Client may not assign the Client's rights or obligations to any third party.

## Term
The parties intend that the term of the arrangements under this Agreement shall be for three (3) years with one (1) year renewal options.

## Renewal
Professional services provided by HHMCC are automatically renewed by the Client making a renewal payment.

## Termination by HHMCC with Cause
This Agreement may be terminated by HHMCC upon a material breach of any provision of this Agreement by Client that is not cured within thirty (30) days after written or oral notice is given to Client specifying the nature of the alleged breach or such any change arises in regulation that would cause to the detriment of HHMCC.

## Termination by HHMCC without Cause
This Agreement may be terminated by HHMCC without cause upon thirty (30) days written notice to Client.

## Termination by Client with Cause
This Agreement may be terminated by Client upon a material breach of any provision of this Agreement by HHMCC that is not cured within thirty (30) days after written notice is given to HHMCC specifying the nature of the alleged breach or upon any change in law or regulation that would make illegible as the business or Client. In the event of termination of the agreement all fees owed HHMCC by Client remains due and payable as per the payment terms section of this agreement for the entire term of this agreement.

## Termination by Client without Cause
This Agreement may be terminated by Client within cause upon thirty (30) days written notice to HHMCC. In the event said Agreement is terminated without cause there shall be no penalties or the return of payment fees due from Client. In the event of termination of this agreement, all fees owed HHMCC by client remains due and payable as per the payment terms section of this agreement, for the entire term of the agreement.

STRATEGIC.00073

EXHIBIT 18
PAGE 300

**Additional Remedies**

In the event the default by either party involves the failure to make a payment as provided in this Agreement, the non-defaulting party shall, in addition to the recovery of the unpaid amount, be entitled to reasonable attorney's fees and costs of collection, and shall be further entitled to interest on such unpaid amounts from the date such amounts become due and payable.

**Effect of Termination**

In addition to any other provisions of this Agreement, if this Agreement is terminated pursuant to the above, then neither the Client nor their affiliates may use, rely upon, or represent in any person or entity, the affiliation with IHMMCC for any purpose.

**No Warranty**

The Client acknowledges that IHMMCC has not made and will not make any express or implied warranties or representations that the services provided by IHMMCC will result in any particular amount or level of revenues to the Client or income to any Client.

**Notices**

Except as otherwise expressly set forth herein, all notice required or permitted to be given hereunder shall be in writing and shall be deemed effective when personally delivered, sent via overnight delivery or, if mailed, three (3) days after the date deposited in the United States Mail, postage prepaid, registered, or certified, and return receipt requested or by email communication. Unless changed by written notice given by one party to the other as provided herein, such notices shall be given to IHMMCC at the following address:

>The Industrial Hemp and Medical Marijuana Consulting Company, Inc.
>8174 Las Vegas Boulevard South, #109-387
>Las Vegas, Nevada 89123

Such notices shall be given to the Client at the address and/or email listed on file with IHMMCC.

**Severability**

In the event that any of the provisions of this Agreement are held to be invalid or unenforceable by any court of competent jurisdiction, the remaining provisions hereof shall not be affected thereby, and the provision found invalid or unenforceable shall be revised or interpreted to the extent permitted by law so as to uphold the validity and enforceability of this Agreement and the intent of the parties as expressed herein.

**Governing Law**

This Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the laws of the State of Nevada and venue shall be in Clark County Nevada.

**Entire Agreement**

This Agreement, along with all amendments and counterparts referred to herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, either oral or written, between the parties with respect thereto. Any modification to this Agreement must be made in writing and signed by all of the parties.

**Headings**

The section headings used in this Agreement are included solely for convenience and shall not affect the interpretation of this Agreement.

**Waiver**

No term or condition of this Agreement shall be deemed to have been waived except by written instrument of the party charged with such waiver.

STRATEGIC:00074

EXHIBIT 18
PAGE 301

## Construction of Words
The language herein shall be construed, in all cases, according to its plain meaning and not for or against either party.

## Prevention of Performance by IHMMCC
IHMMCC shall not be liable for any loss or damage to the Client (including, without limitation, direct, indirect, incidental and consequential damages) due to any failure in its performance hereunder: (i) because of compliance with any order, request, or control of any governmental authority or person purporting to act therefore, whether or not said order, request or control ultimately proves to have been invalid; or (ii) when its performance is interrupted, frustrated or prevented, or rendered impossible or impractical because of wars, hostilities, public disorders, acts of terrorism, enemies, sabotage, strikes, lockouts, labor or employment difficulties, fires, or acts of God, or any cause beyond its control, whether or not similar to any of the foregoing. Without limitation of the foregoing, PEN shall not be required to challenge or resist any such order, request or control, or to proceed or attempt to proceed with performance if such performance shall involve additional expense or a departure from its normal practices, unless the parties shall expressly agree as to the further obligations (including, without limitation, an obligation to bear all or part of any such additional expense) to be borne by the Client as a result thereof.

## Waiver of Breach
The waiver of any breach of any term or condition of this Agreement shall not be deemed to constitute the waiver of any subsequent breach of the same or any other term or condition hereof.

## Remedies
The remedies provided to the parties by this Agreement are not exclusive or exhaustive, but cumulative and in addition to any other remedies the parties may have, at law or in equity.

## Attorney's Fees
If legal action is commenced by either party to enforce or defend its rights under this Agreement, the prevailing party in such action shall be entitled to recover its costs and reasonable attorneys' fees in addition to any other relief granted. The term "prevailing party" shall mean the party in whose favor final judgment after appeal (if any) is rendered with respect to the claims asserted in the complaint, and the term "reasonable attorneys' fees" are those attorneys' fees actually incurred in obtaining a judgment in favor of the prevailing party.

## Survival
The indemnities, representations and warranties set forth herein shall survive the expiration, termination, or rescission of this Agreement for a period of one (1) year.

## Counterparts
This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have duly executed this Professional Consulting Services Agreement effective on this 18th day of March, 2014.

THE INDUSTRIAL HEMP AND MEDICAL MARIJUANA CONSULTING COMPANY, INC., a wholly owned subsidiary of Hemp, Inc.

By: _Bruce Perlowin_
By: Industrial Hemp and Medical Marijuana Consulting Company, Inc.

Dated: 3/19/14

_Andrew Feller_
Client: Andy Fellner CEO

Dated: 3/19/14

Print Name: Strategic Global Investments, Inc.

IHMMCC is a wholly owned subsidiary of Hemp, Inc. (OTC: HEMP)

Page 4 of 5

STRATEGIC 00075

EXHIBIT 18
PAGE 302

*Address:*    8451 Miralani Drive, Suite D

*City/State/Zip:*    San Diego, CA 92126

*Email Address:*    andy@wazzla.com

*Phone:*    760.685.7171

HBMMCC is a wholly owned subsidiary of Hamagata, Inc. 10% ...

Page 5 of 5

STRATEGIC 00076

EXHIBIT 18
PAGE 303

# #22

STRATEGIC 00027

EXHIBIT 18
PAGE 304

# Production Agreement

Date 4-11-2014
Job # 1001

This agreement is made as of this date, April 4, 2014, between Contracting Client Strategic Global Investments ("Client"), and Television101 Production Company ("Producer").

Producer hereby agrees to produce and deliver to Client the production of the below referenced media ("Sizzle Reel, Working Title TBD"), subject to and in accordance with all terms, conditions, and specifications set forth herein.

Working Title: "The Collective or TBD"

Length: 3:00 to 7:00

Media Type: Digital HD

Sound: Yes

Project Cost: 1st Installment $7,500.00
        2nd Installment to be agreed upon by Client and Producer on a later date.
Total Cost: TBD and agreed upon by Client and Producer.

1st Installment due Immediately. Total $7,500.00

It is the essence of this Agreement that all completed media and services supplied by Producer shall be of applicable production standards. Producer agrees that the media shall be of quality, artistically produced with direction, photography, sound, art, animation, synchronization and other physical and aesthetic content as agreed upon by Client and Producer.

Agreed and Signed

Client: Strategic Global Investments                    Producer: Television101

Signature _Andrew Fellner-Pres_,          Signature _Jeff S A_

Date: April 11, 2014

**STRATEGIC 00078**

EXHIBIT 18
PAGE 305

# #23

STRATEGIC 00079

EXHIBIT 18
PAGE 306


**Multimedia**

# Memorandum of Understanding

This Memorandum of Understanding is between Soapbox Multimedia Incorporated, a California Corporation hereinafter referred to as Soapbox and Strategic Global Investments Incorporated, a Delaware Corporation hereinafter referred to as STBV.

Whereas:

STBV desires to produce a video program about the legal Cannabis Industry in Colorado as a part of the company's overall business strategy.

Soapbox is a professional video production company owned and managed by Emmy Award-winning producers Ron Franklin, Lenke Angel and Chris Tittle.

Agreement:

STBV and Soapbox hereby agree to jointly proceed with pre-production creative development of a video program that can be marketed to cable television networks.

Soapbox will develop the creative concepts for the show, write a script for the promo reel, develop graphics, record audio and music and edit a finished video promo reel approximately 90 seconds in length.

Soapbox will develop full production budgets and shooting schedules for 13 episodes of the TV show.

STBV agrees to pay Soapbox $5,000 for production of the promo reel and preparation of production schedules and budgets for the show. The promo video will be delivered to STBV by Soapbox as a 1080p video file within two weeks after this agreement is funded.

STBV agrees to partner with Soapbox for a full 13-week season of episodes provided that funding for the project is secured and production budgets have been mutually agreed.

Date of this agreement: March 4 2014

Ron Franklin CEO               Lenke Angel               Chris Tittle
For Soapbox Multimedia Inc.

Andrew Fellner CEO
For Strategic Global Investments, Inc.

**STRATEGIC 00080**

EXHIBIT 18
PAGE 307

# #24

STRATEGIC 00081

EXHIBIT 18
PAGE 308

Item 24

Contact information for Andrew S. Zucker, Esq.
Isaacman, Kaufman & Painter
10250 Constellation Blvd., Suite 2900
Los Angeles, CA 90087
310.881.6800

**STRATEGIC 00082**

EXHIBIT 18
PAGE 309



The Industrial Hemp and Medical Marijuana Consulting Company, Inc.

## PROFESSIONAL CONSULTING
## SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "Agreement") is entered into the execution date signed below by and between THE INDUSTRIAL HEMP AND MEDICAL MARIJUANA CONSULTING COMPANY, INC., hereinafter referred to as "IHMMCC", a Nevada Corporation, for itself and its heirs, executors, administrators, related entities and assigns, and Strategic Global Investments, Inc. whose signature is executed below, hereinafter referred to as "Client".

WHEREAS, Client is interested in obtaining professional consulting services in the Industrial Hemp/Medical Marijuana industry, and WHEREAS, IHMMCC has agreed to provide the following and other related professional services for Client. Consulting Services specific to the Industrial Hemp/Medical Marijuana industry in the area of sales and marketing strategy, press releases, public company venues, and general industry specific business guidance.

NOW, THEREFORE, for and in consideration of the promises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and on the terms and conditions set forth herein, the parties have agreed and hereby do agree as follows:

### Services
IHMMCC shall provide to Client the professional services listed above on a continuing basis during the term of the Agreement.

### Engagement
The Client hereby engages IHMMCC to provide the professional services stated herein.

### Excluded Services and Liabilities
IHMMCC has no obligation or authority under this Agreement, and shall not undertake, any activity which is prohibited by the federal government in regard to Industrial Hemp/Medical Marijuana regardless of the implementation of any State Medical Marijuana Program. Moreover, the parties acknowledge and agree that IHMMCC may not be held responsible for any damages, costs, or liabilities related to the any such services delivered by the Client related to Industrial Hemp/Medical Marijuana.

### Professional Services
IHMMCC shall use its best efforts to ensure that all professional services provided by IHMMCC are provided in compliance at all times with all applicable state and federal laws, rules, and regulations.

### Professional Fees
The Client and IHMMCC agree that the fees set forth in this Section are being paid to IHMMCC in consideration for its extensive business knowledge and experience in the Industrial Hemp/Medical Marijuana industry and that such fees have been negotiated at arm's length and are fair, reasonable, and consistent with fair market value of the services furnished by IHMMCC.

### Payment Terms
The Client shall pay to IHMMCC a Professional Consulting Fee of one billion five hundred million (1,500,000,000) shares of Strategic Global Investments, Inc. (STSV) Common Stock restricted under rule 144 and fifty thousand dollars ($50,000), with fifty thousand dollars ($50,000.00) component paid in full by

*IHMMCC is a wholly owned subsidiary of Remay Inc. (OTC:___)*

Page 1 of 5

STRATEGIC 00083

EXHIBIT 18
PAGE 310

**STRATEGIC.00084**

EXHIBIT 18
PAGE 311

**Additional Remedies**

In the event the default by either party involves the failure to make a payment as provided in this Agreement, the non-defaulting party shall, in addition to the recovery of the unpaid amount, be entitled to reasonable attorney's fees and costs of collection, and shall be further entitled to interest on such unpaid amounts from the date such amounts became due and payable.

**Effect of Termination**

In addition to any other provisions of this Agreement, if this Agreement is terminated pursuant to the above, then neither the Client nor their affiliates may use, rely upon, or represent to any person or entity the affiliation with IHMMCC for any purpose.

**No Warranty**

The Client acknowledges that IHMMCC has not made and will not make any express or implied warranties or representations that the services provided by IHMMCC will result in any particular amount or level of revenues to the Client or income to any Client.

**Notices**

Except as otherwise expressly set forth herein, all notice required or permitted to be given hereunder shall be in writing and shall be deemed effective when personally delivered, sent via overnight delivery or if mailed, three (3) days after the date deposited in the United States Mail, postage prepaid, registered or certified, and return receipt requested or by email communication. Unless changed by written notice given by one party to the other as provided herein, such notices shall be given to IHMMCC at the following address:

> The Industrial Hemp and Medical Marijuana Consulting Company, Inc.
> 8174 Las Vegas Boulevard South, #109-387
> Las Vegas, Nevada 89123

Such notices shall be given to the Client at the address and/or email listed on file with IHMMCC.

**Severability**

In the event that any of the provisions of this Agreement are held to be invalid or unenforceable by any court of competent jurisdiction, the remaining provisions hereof shall not be affected thereby, and the provision found invalid or unenforceable shall be revised or interpreted to the extent permitted by law so as to uphold the validity and enforceability of this Agreement and the intent of the parties as expressed herein.

**Governing Law**

This Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the laws of the State of Nevada and venue shall be in Clark County, Nevada.

**Entire Agreement**

This Agreement, along with all amendments and counterparts referred to herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, either oral or written, between the parties with respect thereto. Any modification to this Agreement must be made in writing and signed by all of the parties.

**Headings**

The section headings used in this Agreement are included solely for convenience and shall not affect the interpretation of this Agreement.

**Waiver**

No term or condition of this Agreement shall be deemed to have been waived except by written instrument of the party charged with such waiver.

IHMMCC is a wholly owned subsidiary of Nevada, Inc. (IHMMCC)

STRATEGIC.00085

EXHIBIT 18
PAGE 312

**Construction of Words**
The language herein shall be construed, in all cases, according to its plain meaning and not for or against either party.

**Prevention of Performance by IHMMCC**
IHMMCC shall not be liable for any loss or damage to the Client (including, without limitation, direct, indirect, incidental and consequential damages) due to any failure in its performance hereunder (i) because of compliance with any order, request, or control of any governmental authority or person purporting to act therefore, whether or not said order, request or control ultimately proves to have been invalid, or (ii) when its performance is interrupted, frustrated or prevented, or rendered impossible or impractical because of wars, hostilities, public disorders, acts of terrorism, enemies, sabotage, strikes, lockouts, labor or employment difficulties, fires, or acts of God, or any cause beyond its control, whether or not similar to any of the foregoing. Without limitation of the foregoing, PEN shall not be required to challenge or resist any such order, request or control, or to proceed or attempt to proceed with performance if such performance shall involve additional expense or a departure from its normal practices, unless the parties shall expressly agree as to the further obligations (including, without limitation, an obligation to bear all or part of any such additional expense) to be borne by the Client as a result thereof.

**Waiver of Breach**
The waiver of any breach of any term or condition of this Agreement shall not be deemed to constitute the waiver of any subsequent breach of the same or any other term or condition hereof.

**Remedies**
The remedies provided to the parties by this Agreement are not exclusive or exhaustive, but cumulative and in addition to any other remedies the parties may have, at law or in equity.

**Attorney's Fees**
If legal action is commenced by either party to enforce or defend its rights under this Agreement, the prevailing party in such action shall be entitled to recover its costs and reasonable attorneys' fees in addition to any other relief granted. The term "prevailing party" shall mean the party in whose favor final judgment after appeal (if any) is rendered with respect to the claims asserted in the complaint, and the term "reasonable attorneys' fees" are those attorneys' fees actually incurred in obtaining a judgment in favor of the prevailing party.

**Survival**
The indemnities, representations and warranties set forth herein shall survive the expiration, termination, or rescission of this Agreement for a period of one (1) year.

**Counterparts**
This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have duly executed this Professional Consulting Services Agreement effective on this 18th day of March, 2014.

THE INDUSTRIAL HEMP AND MEDICAL MARIJUANA CONSULTING COMPANY, INC. a wholly owned subsidiary of Hemp, Inc.

By: _Bruce Perlowin_                                        Dated: 3/19/14
Industrial Hemp and Medical Marijuana Consulting Company, Inc.

_Barbara Perlowin_                                          Dated: 3/19/14
Clara Eady Perlowin, CEO

Name Typed:     Strategic Global Investments, Inc.

IHMMCC is a wholly owned subsidiary of Hemp, Inc. d/b/t

Address      8481 Miralani Drive, Suite D

City/State/Zip    San Diego, CA 92125

Email Address    andy@wazdie.com

Phone      760 855.7171

STRATEGIC. 00087

EXHIBIT 18
PAGE 314

**JGMJ Consulting**
**A Medical Marijuana Consulting Company**
**PROFESSIONAL CONSULTING**
**SERVICES AGREEMENT**

THIS CONSULTING SERVICES AGREEMENT (the "Agreement") is entered into the execution date signed below by and between JGMJ Consulting hereinafter referred to as "JGMJ", a Canadian Company for itself and its heirs, executors, administrators, related entities and assigns, and Strategic Global Investments, inc. whose signature is executed below, hereinafter referred to as "Client"

WHEREAS, Client is interested in obtaining professional consulting services in the Industrial Hemp/Medical Marijuana Industry, and WHEREAS, JGMJ has agreed to provide the following and other related professional services for Client: Consulting Services specific to the Industrial Hemp/Medical Marijuana Industry and general industry specific business guidance

NOW, THEREFORE, for and in consideration of the promises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and on the terms and conditions set forth herein, the parties have agreed and hereby do agree as follows

**Services**
JGMJ shall provide to Client the professional services listed above on a continuing basis during the term of the Agreement.

**Engagement**
The Client hereby engages JGMJ to provide the professional services stated herein.

**Excluded Services and Liabilities**
JGMJ has no obligation or authority under this Agreement, and shall not undertake, any activity which is prohibited by the federal government (US or Canada) in regard to Industrial Hemp/Medical Marijuana regardless of the implementation of any State Medical Marijuana Program. Moreover, the parties acknowledge and agree that JGMJ may not be held responsible for any damages, costs, or liabilities related to the any such services delivered by the Client related to Industrial Hemp/Medical Marijuana.

**Professional Services**
JGMJ shall use its best efforts to ensure that all professional services provided by JGMJ are provided in compliance at all times with all applicable state and federal laws, rules, and regulations

**Professional Fees**
The Client and JGMJ agree that the fees set forth in this Section are being paid to JGMJ in consideration for its extensive business knowledge and experience in the Industrial Hemp/Medical Marijuana Industry and that such fees have been negotiated at arm's length and are fair, reasonable, and consistent with fair market value of the services furnished by JGMJ.

**Payment Method**
The Client shall pay to JGMJ a Professional Consulting Fee of 500,000 COMMON Shares of stock and $1,000 (US) in cash for each term of the Agreement, with said stock and cash being made payable to (TBD) The initial payment of 500,000 Common Shares of stock and $1,000 (US) in cash is due upon the execution of this agreement. The Client shall further pay to JGMJ as part of the Professional Consulting Fee 500,000 common restricted shares made payable to (TBD), on a semi-annual basis, and $1,000 (US) in cash on a semi-annual basis. If payment is not remitted within thirty (30) business days of the date of such payment due date, all services provided by JGMJ to Client will automatically terminate and Client will remain liable for the payment.

Page 1 of 4

STRATEGIC.00088

EXHIBIT 18
PAGE 315

The Professional Consulting Services Fee may be adjusted from time to time which adjustment mutually approved by Client and JCMJ.

## Fee Agreement
The Client agrees to pay all JGMJ related Fees   JGMJ may establish or change Professional Consulting Services Fees for Renewal Terms by emailing the Client via the email address provided by the Client, or by otherwise notifying the Client in writing in advance of the applicable Renewal Term. This Agreement is personal to the Client, and the Client may not assign the Client's rights or obligations to any third party.

## Term
The parties intend that the term of the arrangements under this Agreement shall be for One (1) year with one (1) year renewal options.

## Termination by JGMJ with Cause
This Agreement may be terminated by JGMJ upon a material breach of any provision of this Agreement by Client that is not cured within thirty (30) days after written or oral notice is given to Client specifying the nature of the alleged breach or upon any change in law or regulation that would inure to the detriment of JGMJ.

## Termination by JCMJ without Cause
This Agreement may be terminated by JGMJ without cause upon thirty (30) days written notice to Client.

## Termination by Client with Cause
This Agreement may be terminated by Client upon a material breach of any provision of this Agreement by JCMJ that is not cured within thirty (30) days after written notice is given to JGMJ specifying the nature of the alleged breach or upon any change in law or regulation that would inure to the detriment of Client.

## Termination by Client without Cause
This Agreement may be terminated by Client without cause upon thirty (30) days written notice to JGMJ. In the event said Agreement is terminated without cause there shall be no proration of the initial or semi-annual fee due from Client.

## Additional Remedies
In the event the default by either party involves the failure to make a payment as provided in this Agreement, the non-defaulting party shall, in addition to the recovery of the unpaid amount, be entitled to reasonable attorney's fees and costs of collection, and shall be further entitled to interest on such unpaid amounts from the date such amounts become due and payable

## Effect of Termination
In addition to any other provisions of this Agreement, if this Agreement is terminated pursuant to the above, then neither the Client nor their affiliates may use, rely upon, or represent to any person or entity, the affiliation with JGMJ for any purpose.

## No Warranty
The Client acknowledges that JGMJ has not made and will not make any express or implied warranties or representations that the services provided by JGMJ will result in any particular amount or level of revenues to the Client or income to any Client

## Notices
Except as otherwise expressly set forth herein, all notice required or permitted to be given hereunder shall be in writing and shall be deemed effective when personally delivered  sent via overnight delivery or, if mailed, three (3) days after the date deposited in the United States Mail, postage prepaid, registered, or certified, and return receipt requested or by email communication. Unless changed by written notice given by one party to the other as provided herein, such notices shall be given to at the following address:

Page 3 of 4

**STRATEGIC 00089**

EXHIBIT 18
PAGE 316

JCMJ Consulting Company
1835 Fernwood Rd
Victoria, BC, Canada V8T 2Y5

Such notices shall be given to the Client at the address and/or email listed on file with JCMJ

## Severability

In the event that any of the provisions of this Agreement are held to be invalid or unenforceable by any court of competent jurisdiction, the remaining provisions hereof shall not be affected thereby, and the provision found invalid or unenforceable shall be revised or interpreted to the extent permitted by law so as to uphold the validity and enforceability of this Agreement and the intent of the parties as expressed herein

## Governing Law

This Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the laws of the State of CA and venue shall be in San Diego county CA

## Entire Agreement

This Agreement, along with all amendments and counterparts referred to herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, either oral or written, between the parties with respect thereto. Any modification to this Agreement must be made in writing and signed by all of the parties.

## Headings

The section headings used in this Agreement are included solely for convenience and shall not affect the interpretation of this Agreement

## Waiver

No term or condition of this Agreement shall be deemed to have been waived except by written instrument of the party charged with such waiver

## Construction of Words

The language herein shall be construed, in all cases according to its plain meaning and not for or against either party.

## Prevention of Performance by JCMJ

JCMJ shall not be liable for any loss or damage to the Client (including without limitation, direct, indirect, incidental and consequential damages) due to any failure in its performance hereunder, (i) because of compliance with any order, request, or control of any governmental authority or person purporting to act therefore, whether or not said order, request or control ultimately proves to have been invalid; or (ii) when its performance is interrupted, frustrated or prevented, or rendered impossible or impractical because of wars, hostilities, public disorders, acts of terrorism enemies, sabotage, strikes, lockouts, labor or employment difficulties, fires, or acts of God, or any cause beyond its control, whether or not similar to any of the foregoing. Without limitation of the foregoing, PEN shall not be required to challenge or resist any such order, request or control, or to proceed or attempt to proceed with performance if such performance shall involve additional expense or a departure from its normal practices unless the parties shall expressly agree as to the further obligations (including, without limitation, an obligation to bear all or part of any such additional expense) to be borne by the Client as a result thereof.

## Waiver of Breach

The waiver of any breach of any term or condition of this Agreement shall not be deemed to constitute the waiver of any subsequent breach of the same or any other term or condition hereof

## Remedies

The remedies provided to the parties by this Agreement are not exclusive or exhaustive, but cumulative and in addition to any other remedies the parties may have, at law or in equity

Page 3 of 4

STRATEGIC 00090

EXHIBIT 18
PAGE 317

**Attorney's Fees**
If legal action is commenced by either party to enforce or defend its rights under this Agreement the prevailing party in such action shall be entitled to recover its costs and reasonable attorneys' fees in addition to any other relief granted. The term "prevailing party" shall mean the party in whose favor final judgment after appeal (if any) is rendered with respect to the claims asserted in the complaint, and the term "reasonable attorneys' fees" are those attorneys' fees actually incurred in obtaining a judgment in favor of the prevailing party.

**Survival**
The indemnities, representations and warranties set forth herein shall survive the expiration, termination, or rescission of this Agreement for a period of one (1) year.

**Counterparts**
This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have duly executed this Professional Consulting Services Agreement effective on this _26 7th_ day of _FEB_, 2014.

By: _KiMi Consulting_                                Dated: _Feb, 26, 2014_

Client

Print Name:    _ANDREW FELLNER_
Address:       _8457 MIRALANI DR SUITE D_
City State Zip: _SAN DIEGO CA 92126_
Email Address: _ANDY @ WBZILLO.COM_
Phone:         _760-685-7171_
Fax:

Page 4 of 4

STRATEGIC 00091 .

EXHIBIT 18
PAGE 318

# #25

**STRATEGIC.00092**

EXHIBIT 18
PAGE 319

JGMJ Consulting
A Medical Marijuana Consulting Company
**PROFESSIONAL CONSULTING
SERVICES AGREEMENT**

THIS CONSULTING SERVICES AGREEMENT (the "Agreement") is entered into the execution date signed below by and between JGMJ Consulting hereinafter referred to as "JGMJ" a Canadian Company for itself and its heirs, executors, administrators, related entities and assigns, and Strategic Global Investments Inc. whose signature is executed below, hereinafter referred to as "Client"

WHEREAS, Client is interested in obtaining professional consulting services in the Industrial Hemp/Medical Marijuana Industry, and WHEREAS, JGMJ has agreed to provide the following and other related professional services for Client: Consulting Services specific to the Industrial Hemp/Medical Marijuana Industry and general industry specific business guidance

NOW, THEREFORE, for and in consideration of the promises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and on the terms and conditions set forth herein, the parties have agreed and hereby do agree as follows

**Services**
JGMJ shall provide to Client the professional services listed above on a continuing basis during the term of the Agreement.

**Engagement**
The Client hereby engages JGMJ to provide the professional services stated herein.

**Excluded Services and Liabilities**
JGMJ has no obligation or authority under this Agreement, and shall not undertake, any activity which is prohibited by the federal government (US or Canada) in regard to Industrial Hemp/Medical Marijuana regardless of the implementation of any State Medical Marijuana Program. Moreover the parties acknowledge and agree that JGMJ may not be held responsible for any damages, costs, or liabilities related to the any such services delivered by the Client related to Industrial Hemp/Medical Marijuana.

**Professional Services**
JGMJ shall use its best efforts to ensure that all professional services provided by JGMJ are provided in compliance at all times with all applicable state and federal laws, rules, and regulations

**Professional Fees**
The Client and JGMJ agree that the fees set forth in this Section are being paid to JGMJ in consideration for its extensive business knowledge and experience in the Industrial Hemp/Medical Marijuana Industry and that such fees have been negotiated at arm's length and are fair, reasonable, and consistent with fair market value of the services furnished by JCMJ

**Payment Method**
The Client shall pay to JGMJ a Professional Consulting Fee of 500,000 COMMON Shares of stock and $1,000 (US) in cash for each term of the Agreement, with said stock and cash being made payable to (TBD) The initial payment of 500,000 Common Shares of stock and $1,000 (US) in cash is due upon the execution of this agreement. The Client shall further pay to JGMJ as part of the Professional Consulting Fee 500,000 common restricted shares made payable to (TBD), on a semi-annual basis and $1,000 (US) in cash on a semi-annual basis. If payment is not remitted within thirty (30) business days of the date of such payment due date, all services provided by JGMJ to Client will automatically terminate and Client will remain liable for the payment.

STRATEGIC.00093

EXHIBIT 18
PAGE 320

The Professional Consulting Services Fee may be adjusted from time to time which adjustment mutually approved by Client and JGMJ.

### Fee Agreement

The Client agrees to pay all JGMJ related Fees. JGMJ may establish or change Professional Consulting Services Fees for Renewal Terms by emailing the Client via the email address provided by the Client, or by otherwise notifying the Client in writing in advance of the applicable Renewal Term. This Agreement is personal to the Client, and the Client may not assign the Client's rights or obligations to any third party.

### Term

The parties intend that the term of the arrangements under this Agreement shall be for One (1) year with one (1) year renewal options.

### Termination by JGMJ with Cause

This Agreement may be terminated by JGMJ upon a material breach of any provision of this Agreement by Client that is not cured within thirty (30) days after written or oral notice is given to Client specifying the nature of the alleged breach or upon any change in law or regulation that would inure to the detriment of JGMJ.

### Termination by JGMJ without Cause

This Agreement may be terminated by JGMJ without cause upon thirty (30) days written notice to Client.

### Termination by Client with Cause

This Agreement may be terminated by Client upon a material breach of any provision of this Agreement by JGMJ that is not cured within thirty (30) days after written notice is given to JGMJ specifying the nature of the alleged breach or upon any change in law or regulation that would inure to the detriment of Client.

### Termination by Client without Cause

This Agreement may be terminated by Client without cause upon thirty (30) days written notice to JGMJ. In the event said Agreement is terminated without cause there shall be no proration of the initial or semi-annual fee due from Client.

### Additional Remedies

In the event the default by either party involves the failure to make a payment as provided in this Agreement, the non-defaulting party shall, in addition to the recovery of the unpaid amount, be entitled to reasonable attorney's fees and costs of collection, and shall be further entitled to interest on such unpaid amounts from the date such amounts become due and payable.

### Effect of Termination

In addition to any other provisions of this Agreement, if this Agreement is terminated pursuant to the above, then neither the Client nor their affiliates may use, rely upon, or represent to any person or entity the affiliation with JGMJ for any purpose.

### No Warranty

The Client acknowledges that JGMJ has not made and will not make any express or implied warranties or representations that the services provided by JGMJ will result in any particular amount or level of revenues to the Client or income to any Client.

### Notices

Except as otherwise expressly set forth herein, all notice required or permitted to be given hereunder shall be in writing and shall be deemed effective when personally delivered, sent via overnight delivery or if mailed, three (3) days after the date deposited in the United States Mail, postage prepaid, registered, or certified, and return receipt requested or by email communication. Unless changed by written notice given by one party to the other as provided herein, such notices shall be given to at the following address:

Page 5 of 4

**STRATEGIC 00094**

EXHIBIT 18
PAGE 321

JCMJ Consulting Company
1835 Fernwood Rd
Victoria, BC, Canada V8T 2Y5

Such notices shall be given to the Client at the address and/or email listed on file with JCMJ

## Severability

In the event that any of the provisions of this Agreement are held to be invalid or unenforceable by any court of competent jurisdiction, the remaining provisions hereof shall not be affected thereby, and the provision found invalid or unenforceable shall be revised or interpreted to the extent permitted by law so as to uphold the validity and enforceability of this Agreement and the intent of the parties as expressed herein

## Governing Law

This Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the laws of the State of CA and venue shall be in San Diego county CA.

## Entire Agreement

This Agreement, along with all amendments and counterparts referred to herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, either oral or written, between the parties with respect thereto. Any modification to this Agreement must be made in writing and signed by all of the parties.

## Headings

The section headings used in this Agreement are included solely for convenience and shall not affect the interpretation of this Agreement

## Waiver

No term or condition of this Agreement shall be deemed to have been waived except by written instrument of the party charged with such waiver

## Construction of Words

The language herein shall be construed, in all cases, according to its plain meaning and not for or against either party.

## Prevention of Performance by JCMJ

JCMJ shall not be liable for any loss or damage to the Client (including, without limitation, direct, indirect, incidental and consequential damages) due to any failure in its performance hereunder, (i) because of compliance with any order, request, or control of any governmental authority or person purporting to act therefore, whether or not said order, request or control ultimately proves to have been invalid; or (ii) when its performance is interrupted, frustrated or prevented, or rendered impossible or impractical because of wars, hostilities, public disorders, acts of terrorism, enemies, sabotage, strikes, lockouts, labor or employment difficulties, fires, or acts of God, or any cause beyond its control whether or not similar to any of the foregoing. Without limitation of the foregoing, PEN shall not be required to challenge or resist any such order, request or control, or to proceed or attempt to proceed with performance if such performance shall involve additional expense or a departure from its normal practices unless the parties shall expressly agree as to the further obligations (including, without limitation, an obligation to bear all or part of any such additional expense) to be borne by the Client as a result hereof.

## Waiver of Breach

The waiver of any breach of any term or condition of this Agreement shall not be deemed to constitute the waiver of any subsequent breach of the same or any other term or condition hereof

## Remedies

The remedies provided to the parties by this Agreement are not exclusive or exhaustive, but cumulative and in addition to any other remedies the parties may have, at law or in equity

Page 3 or 4

STRATEGIC 00095

EXHIBIT 18
PAGE 322

**Attorney's Fees**
If legal action is commenced by either party to enforce or defend its rights under this Agreement, the prevailing party in such action shall be entitled to recover its costs and reasonable attorneys' fees in addition to any other relief granted. The term "prevailing party" shall mean the party in whose favor final judgment after appeal (if any) is rendered with respect to the claims asserted in the complaint, and the term "reasonable attorneys' fees" are those attorneys' fees actually incurred in obtaining a judgment in favor of the prevailing party.

**Survival**
The indemnities, representations and warranties set forth herein shall survive the expiration, termination, or rescission of this Agreement for a period of one (1) year.

**Counterparts**
This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the parties have duly executed this Professional Consulting Services Agreement effective on this 26 7h day of FEB, 2014.

By: FMJ Consulting _____          Dated: Feb, 26, 2014

Client: _____                      Dated: _____

Print Name: ANDREW FELLNER

Address: 8457 MIRALANI DR SUITE D

City State Zip: SAN DIEGO CA 92126

Email Address: ANDY @ WAZILLO.COM

Phone: 760-685-7171

Fax: _____

Page 4 of 4

STRATEGIC.00096

EXHIBIT 18
PAGE 323