Wilfredo Fernandez
Email: fernandezw@sec.gov
Attorney for the Plaintiff
Securities & Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305-982-6376
Facsimile: (305) 536-4154

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STRATEGIC GLOBAL INVESTMENTS, INC. AND ANDREW T. FELLNER,<br><br>Defendants. | Case No.: 16-cv-0514-JLB<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

## I. Introduction

This action arises out of a series of fraudulent misrepresentations relating to the purported entrance into the marijuana industry of Strategic Global Investments, Inc. ("Strategic"), a publicly traded company, and its CEO, Andrew T. Fellner ("Fellner"). Prior to 2014, Strategic was involved in industries wholly-unrelated to marijuana. When the sale of medical marijuana was legalized by the State of Colorado, Strategic made material and misleading statements in press releases announcing it was entering the marijuana business and portraying the company as having successful marijuana-related partnerships and operations. In fact, Strategic never entered the marijuana market nor could it, since its purported facility was located in a county that prohibited marijuana cultivation and Strategic did not have and could not obtain the requisite state licensure, to

1

run a successful marijuana-related business. Strategic was also raising money during this period, and it failed to amend its Form 1-A to disclose its use of investor proceeds for its purported entry into the marijuana business. Through this conduct, Strategic and Fellner violated Section 17(a)(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(2), and Section 10(b) and Rule 10b-5(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b).

## II.     Contentions of Fact

### A.     The False Press Releases

On December 6, 2012, the Colorado Attorney General certified the passage of Amendment 64, codified as Article 18, Section 16 of the Colorado constitution. See *United States v. 6941 Morrison Drive, Denver Colorado*, 6 F. Supp. 3d 1176, 1182 (D. Colo. 2013). The amendment provided that marijuana should be legal as a matter of state law and regulated in a manner similar to alcohol. Colo. Const., Art. XVIII, § 16(1)(a).

Under Colorado law, localities (defined to include counties) could enact ordinances prohibiting the operation of marijuana businesses, including cultivation facilities. *Id.* §§ 2(e), 5(f). In March 2013, Teller County exercised that option with respect to the unincorporated portions of the county. *See* Teller County Ordinance #18, §§ 1, 4(3), 4(4), 5.

Amendment 64 further provides that marijuana cultivation requires a license. *See* Colo. Const., Art. XVIII, § 16(1)(a). The Colorado legislature subsequently enacted implementing legislation, which required a prospective licensee's "owner" to have been a Colorado resident for **two years** at the time of the license application. *See* Colo. Rev. Stat. § 12-43.4-306(1)(k) (emphasis added).

Strategic is a San Diego based Delaware corporation formed in 2008, the common stock of which is quoted on the OTC Pink marketplace (symbol STBV). Strategic's stock is a penny stock as defined by the Exchange Act. Fellner, a Carlsbad, California resident, acquired a controlling interest in Strategic in 2010 and serves as its CEO, secretary, treasurer, and sole director.

Prior to January 2014, Strategic was engaged in businesses unrelated to growing or selling marijuana. In a January 2014 filing with the Commission, Strategic stated it was a development stage company, had "incurred substantial losses in the prior two years," was "minimally capitalized," and had "doubt about [its] ability to continue as a going concern." Financial statements included with the filing showed that for the nine months ended September 30, 2013, Strategic had total revenue of $8,448 and a loss from operations of $776,976.

In February and March 2014, Strategic issued a series of press releases through *www.marketwired.com* claiming it had entered the Colorado marijuana cultivation business:

| DATE | STATEMENTS |
|---|---|
| 2/10/14 | Strategic had entered into "meaningful negotiations" to buy a "Marijuana Growing facility" in Teller County, Colorado. |
| | Strategic's intention was to expand and renovate the cultivation process with new state-of-the-art equipment and advanced growth and harvesting techniques in an effort to capitalize on the recent legalization and resulting high demand of cannabis in the state of Colorado. |
| | Strategic intended to have "signed . . . a final agreement" and "started" its "first new crop" by March 2014. |
| | Strategic had "fully evaluated the industry" and expected to "yield a harvest and generate revenue" by 3rd Quarter 2014. |
| | "The demand in this newly legalized industry is sure to bring in significant revenue going into the third and fourth quarter of 2014." |
| 2/20/14 | Strategic had agreed to buy Bearpot, Inc., which controlled "an existing Marijuana Growing facility" in Teller County. |
| | The transaction provided Strategic "existing equipment and inventory." |
| | Strategic has "evaluated the industry and expects to be able to yield a harvest and generate revenues" by 4th Quarter 2014. |
| 2/24/14 | Bearpot is "a MJ cultivation facility." |

| DATE | STATEMENTS |
|---|---|
|  | Strategic was "eagerly anticipating our first yield to harvest and generating additional revenues" by 4th Quarter 2014. |
| 2/25/14 | Robert Coffy, Bearpot's President, stated Bearpot would use funding from Strategic "to make sure we will be properly licensed and permitted." <br><br> Strategic had "evaluated the industry and expects to be able to yield a harvest and generate revenues" by 4th Quarter 2014. |
| 2/28/14 | "[I]n the next 3-6 months [Strategic's largest growth] will surely be in the growing and distributing of medical and recreational marijuana." |
| 3/27/14 | Bearpot installed "state of the art equipment" and made upgrades to the facility, which "will run extremely efficient[ly]." |

In light of his positions at Strategic, Fellner had ultimate authority over the content of these releases and whether or not they should be issued.

The agreement for Strategic to purchase Bearpot, referenced in the press releases, was entered into as of February 5, 2014. Robert Coffy, of Murrieta, California, was the sole owner of Bearpot, which was leasing the facility in question. Coffy did not incorporate Bearpot until February 14, 2014 and asserted his right under the Fifth Amendment in this litigation.

At the time of the press releases, neither Strategic nor Bearpot had applied for or received a Colorado marijuana cultivation license. Given Fellner's status as a non-resident of Colorado, such a license was a legal impossibility.

Strategic's purported "Marijuana Growing facility" identified in the February 20, 2014 press release was located at 847 Ridge Road, Divide, Colorado, which is in unincorporated Teller County and thus subject to Ordinance 18, the "opt-out" law discussed above. This location was purportedly leased by David Wildfire and Antoinette Moore via an unsigned "Residential Lease" dated November 1, 2013 for the premises.

The Commission staff took Fellner's testimony during its investigation and during discovery in this litigation. On both occasions Fellner asserted his Fifth Amendment privilege to all substantive questions.

**B. The Sale of Stock**

In the first quarter of 2014, Strategic raised operating capital via offerings pursuant to Regulation A of the Securities Act. The Commission qualified this particular Regulation A offering on January 17, 2014.

As part of the qualification process, Strategic submitted to the Commission a Form 1-A, which essentially acts as a registration statement used during an offering under Regulation A of the Securities Act. The Form 1-A informs investors about the offering company, including what type of business it conducts and transacts. Fellner signed the Form 1-A in his role as CEO.

The Form 1-A described Strategic as being in the video business and contained no reference to the marijuana business. The Form 1-A further provided that the proceeds from the offering would be used "primarily to increase the marketing efforts of the company to install more equipment for its live [streaming] based business and for other general corporate purposes."

Strategic never amended or updated its Form 1-A to disclose its purported entry into the marijuana business, including Strategic's use of $50,000 of investor proceeds to acquire Bearpot.

**III. Contentions of Law**

**A. Subject Matter Jurisdiction**

The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

**B.     First Claim for Relief (Violations of 10(b) of the Exchange Act and Rule 10(b)(5))**

In order to meet its burden of proving that Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, the Commission must establish by a preponderance of the evidence that:

(1)     In connection with the purchase or sale of securities, the defendant made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep which made what was said, under the circumstances misleading; or

(2)     The defendant acted with scienter.

(3)     The defendant used an instrumentality of interstate commerce, such as email or telephone, in connection with the purchase or sale of securities, regardless of whether the instrumentality itself was used to make an untrue statement or material omission.

*See* Ninth Circuit Modified Jury Instructions, § 18.2 (modified) (omitting references to reliance and injury, which the Commission need not show); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *SEC v. Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007); *SEC v. Dain Rauscher*, Inc., 254 F.3d 852, 856 (9th Cir. 2001); *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993).

### 1.     Press Releases

#### a.     Defendants Made False Statements and Omissions

A statement is misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011). A statement in the form of a projection, estimate, or forecast contains an "implied factual assertion" that "there is a reasonable basis" for the statement. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir. 1992); *cf. Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318, 1331 n.11 (2015) ("[A]n issuer has special knowledge of

6

its business—including the legal issues the company faces—not available to an ordinary investor.").

In *Platforms Wireless*, the Ninth Circuit affirmed the district court's grant of summary judgment to the Commission on the "material misrepresentation" element. Platforms' press release unveiled a new product, complete with technical details, when at the time the company had only a product description: it had not built a prototype and lacked the funds to do so. *See* 617 F.3d at 1082. The court found the press release left the "unmistakable impression" that the product existed, which, when compared to the true facts (i.e., no prototype and no money to build one) represented "an absolute and unequivocal falsehood." *Id.* at 1095; *see also SEC v. Stratocomm Corp.*, 2 F. Supp. 3d 240, 253-54 (N.D.N.Y. 2014) ("Statements related to whether a company has a product to sell are material as a matter of law. . . . This is particularly true for development-stage companies."), *aff'd*, 652 F. App'x 35 (2d Cir. 2016) (summary order).

It is a material misstatement or omission for a company to state that it will be conducting a business it lacks the legal ability to engage in. *See Sherleigh Associates LLC v. Windmere-Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1270-74 (S.D. Fla. 2000) (materiality sufficiently alleged when defendant announced its acquisition of the right to use the Black & Decker brand name in Latin America without disclosing lack of licenses to operate in Latin America and possibility of extended delays in obtaining them).

By leading the public to believe that Strategic—a money loser up to that point—had a functioning marijuana cultivation facility that could yield revenue in the next six to nine months without disclosing that Strategic could not legally operate as a matter of state and county law, defendants made materially false statements and omissions.. Defendants left investors with the false impression that Strategic had a viable imminent ability to develop and sell a product, when in fact Strategic could not do so under both Colorado and local law. This clearly represents a material difference between the situation as

7

represented and as it actually existed, and therefore the material misrepresentation or omission element is satisfied.

### b. Defendants Statements Were in Connection with the Purchase of Sale of Securities

In the context of publicly disseminated documents such as a press release, the requirement that the fraud be "in connection with" the purchase or sale of a security is satisfied when the statements in question are material:

> Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission."

*SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993); *SEC v. Retail Pro, Inc.*, 673 F. Supp. 2d 1108, 1132 (S.D. Cal. 2009) ("In connection with" requirement satisfied by Commission's proof that false statements were "made in annual and quarterly reports . . . press releases and conference calls."). Since the statements in question were made in press releases and, as shown above, are material, the "in connection with" requirement is satisfied.

### c. Use of Interstate Commerce

This interstate commerce element is satisfied since Strategic's press releases were distributed through www.marketwired.com and its shares were quoted on the OTC Pink Marketplace. *See Stratocomm*¸ 2 F. Supp. 3d at 260 ("[T]there can be no dispute that the press releases and Executive Overview were used in connection with the interstate sale of securities by telephone, over the internet, and publicly traded and quoted on the electronic quotation system formerly known as the Pink Sheets.") (footnote omitted); *see also SEC v. Norstra Energy Inc.*, 2016 WL 4398541, *6 (S.D.N.Y. Aug. 17, 2016) ("Inherently interstate methods of communication, such as the Internet or e-mail, constitute 'instrumentalities' of interstate commerce.").

### d. Defendants Acted With Scienter

Rule 10b-5(b) requires the SEC to prove scienter—"intent to deceive, manipulate, or defraud"—or "reckless conduct." *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011); *see also Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (standard of "deliberate recklessness" established by "an extreme departure from the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it") (citations and quotations omitted).

By stating Strategic could cultivate marijuana when it lacked the legal ability to do so, Defendants acted, at a minimum, with the deliberate recklessness necessary to establish scienter. *See Schueneman*, 840 F.3d at 708 (when company made favorable statements about likely FDA approval of its drug, company acted with deliberate recklessness when it "failed to inform the market about the risk of non-approval or delayed approval based on the FDA's 'concerns' about" animal studies involving the drug).

In addition to the direct evidence of Defendants' deliberate recklessness—the making of material statements with no factual basis—Fellner's Fifth Amendment assertion makes this an appropriate case for drawing an adverse inference against him. In *SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998), the Commission alleged Colello improperly received proceeds of a fraud. Because Colello had asserted his Fifth Amendment privilege, the district court "shift[ed] the burden to Colello to show a legitimate claim to the funds and granted the SEC summary judgment." *Id.* at 677. The Ninth Circuit affirmed, holding that burden shifting was permissible when there was "evidence in addition to the adverse inference to support a court's ruling." *Id.* at 678; *see also SEC v. Luna*, 2014 WL 794202, \*16-17 (D. Nev. Feb. 26, 2014) (drawing adverse inference on issue of scienter in connection with Commission's summary judgment motion); *CFTC v. Driver*, 877 F. Supp. 2d 968, 976-77 (C.D. Cal. 2012) (drawing adverse inference on

9

summary judgment "when there was ample additional evidence to support the CFTC's claims"), *aff'd on other grounds*, 585 F. App'x 366 (9th Cir. 2014) (unpublished).

In this case, there is substantial evidence beyond Fellner's silence. The Commission has established that Defendants made materially false statements and omissions in the sale of securities through the use of interstate commerce. Therefore, given the significant evidence supporting the Commission's claim, it is appropriate for the Court to place the burden on Defendants to show they acted in good faith.

### 2. Form 1-A

The same legal standards demonstrate that Defendants violated Rule 10b-5(b) in connection with their failure to update their Form 1-A to show that they were spending proceeds of the fundraising in a doomed effort to enter the Colorado marijuana market. The undisclosed information was material because investor funds were used in a manner not contemplated by the offering document and in a venture that could not legally generate revenue. Fellner signed the January 2014 Form 1-A, so he was at minimum deliberately reckless in not knowing that the Form 1-A did not reflect Strategic's true use of investor proceeds and acquired assets.

### C. Second Claim for Relief (Violations of Section 17(a)(2) of the Securities Act)

Section 17(a)(2) of the Securities Act is similar to Rule 10b-5(b), except that Section 17(a)(2) requires only a showing of negligence. *See Phan*, 500 F.3d at 908; *SEC v. Husain*, 2017 WL 810269, *7 (C.D. Cal. Mar. 1, 2017). In addition, Section 17(a)(2) requires that the defendant have "directly or indirectly . . . obtain[ed] money or property."

For all the reasons discussed above, Defendants' conduct violated Section 17(a)(2) for the same reasons it violated Rule 10b-5(b).

With respect to Strategic, the "obtaining money or property" requirement is satisfied by Strategic's raising of $2.1 million during the same time frame as the press releases and the Form 1-A.

With respect to Fellner, the Commission contends this element is satisfied by Fellner's raising of money for Strategic, but we would note a split in authority on that issue. *See SEC v. DiMaria*, 207 F. Supp. 3d 343, 358 (S.D.N.Y. 2016); *SEC v. Bardman*, 2016 WL 6276995, *11 (N.D. Cal. Oct. 27, 2016). If the court were to rule that raising money for the entity is insufficient, then Fellner's liability under section 17(a)(2) would be analyzed under the rubric of aiding and abetting (see below).

### D. Third and Fourth Claims for Relief (Aiding and Abetting)

Fellner is alternatively charged with aiding and abetting Strategic's violations of Exchange Act Section 10(b) and Rule 10b-5(b) and Securities Act Section 17(a)(2). In order to establish aiding and abetting liability, the Commission must show the existence of a securities law violation by the primary wrongdoer; knowledge of the violation by the aider and abettor; and proof that the aider and abettor substantially assisted in the primary violation. *See SEC v. Jensen*, 835 F.3d 1100, 1119-20 (9th Cir. 2016); *SEC v. Fehn*, 91 F.3d 1276, 1288 (9th Cir. 1996); *see also* Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b), and Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) (providing statutory authorization for aiding and abetting liability in Commission enforcement actions).

The operative facts supporting aiding and abetting charges against Fellner are the same facts that give rise to Strategic's liability. Fellner knowingly and recklessly participated in the fraud and thus provided substantial assistance to Strategic.

### E. Remedies

If the Commission prevails, it will be seeking: (a) permanent injunctions against both defendants; (b) civil penalties against both defendants pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); (c) an officer and director bars against Fellner pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2); and (d) a penny stock bar against Fellner pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g) and Section 21(d)(6) of the Exchange Act,

15 U.S.C. § 78u(d). These are issues for the Court, not the jury. *See SEC v. Capital Solutions Monthly Income Fund,* LP, 818 F.3d 346, 354 (8th Cir. 2016). Therefore, the SEC will seek these remedies by motion if one or both of the defendants are found liable at trial.

                                              Respectfully submitted,

DATED: April 18, 2017            /s/ Wilfredo Fernandez
                                          Wilfredo Fernandez
                                          Attorney for Plaintiff
                                          United States Securities
                                          and Exchange Commission

## **CERTIFICATE OF SERVICE**

     I, Wilfredo Fernandez, have caused service of this Memorandum by electronically filing it with the Clerk of the District Court using its ECF System, which electronically notifies said party/counsel in this case: Michael W. Jacobs, Esq., Email: mjacobslaw12@gmail.com.

DATED: April 18, 2017

                                          /s/ Wilfredo Fernandez
                                          Wilfredo Fernandez